840 So.2d 679 (2003)
D.M. KENNEDY, Jr., Plaintiff-Appellant,
v.
Rosanne KENNEDY, Defendant-Appellee.
No. 36,974-CA.
Court of Appeal of Louisiana, Second Circuit.
March 5, 2003.
*680 Mason Oswalt, Monroe, for Appellant.
Donald L. Kneipp, Monroe, for Appellee.
Before WILLIAMS, CARAWAY and DREW, JJ.
CARAWAY, J.
This community property partition dispute arises from the parties' compromise recited in open court during the trial. Before the later rendition of the consent judgment, appellant claimed an error in his understanding of the settlement's disposition of one of the assets and contested the imposition of interest on his equalizing payment under the terms of the compromise. The trial court rejected appellant's claims and upheld the compromise. A consent judgment expressing the settlement was rendered subject to appellant's right to appeal. We affirm the trial court's upholding of the compromise and the consent judgment, but amend to adjust the rate of interest owed on appellant's equalizing payment to the contractual rate stipulated in the parties' agreement.

Facts
After obtaining their divorce, D.M. Kennedy, Jr. and Rosanne Kennedy proceeded to trial to partition their community property in October, 2001. During the trial, in open court, the parties informed the trial court that they had settled the great majority of their dispute. From the parties' stipulations, Mr. Kennedy was to receive property that exceeded the value of the property received by Mrs. Kennedy. Therefore, Mr. Kennedy would make three equalizing payments to Mrs. Kennedy to make up the difference. The value of one piece of property, however, the 1103 Warren Drive property (the "Warren Drive Property"), was not finally determined by the settlement. Instead, the parties in their compromise agreed to submit conflicting property appraisals for that property to the court.
Mr. Kennedy's first equalizing payment in the amount of $57,000 was made at the time of the settlement on October 11, 2001. According to the compromise, the second equalizing payment in the amount of $151,692.48 was to be made within 90 days, by January 10, 2002. The amount of the third equalizing payment was tied to one-half of the value of the Warren Drive Property and would be paid to Mrs. Kennedy when the trial court determined the property's value. In exchange, Mr. Kennedy was to obtain full ownership of the Warren Drive Property.
At the time of the parties' compromise in open court, they utilized Mrs. Kennedy's detailed descriptive list of community property and accounting claims, which was marked as joint Exhibit J-2 for the compromise. Section I(A)(2) of Exhibit J-2 listed rental properties as items "a" through "x." Item "c" described the Warren Drive Property. At trial, before reaching the compromise, Mr. Kennedy submitted an appraisal by Richard Moore estimating the gross value of twenty-three rental properties at $453,000 and the net value at $385,000. Notably, Moore's appraisal omitted item "c" (the Warren Drive Property) from the $453,000 valuation. Beneath the rental property section, the next section of Exhibit J-2, entitled "Mobile Home Park at 1103 Warren Drive," included the disputed property. Mrs. Kennedy valued this parcel at $263,000 in her detailed descriptive list.
*681 From the above description of the properties, it is seen that the Warren Drive Property had a confusing dual listing on Mrs. Kennedy's detailed descriptive list which eventually became the critical Exhibit J-2 for the compromise. This dual listing was not specifically addressed by the colloquy between the court and respective counsel in the discussion of the compromise:
Mr. Kneipp: And I'm going from the beginning of the second amended sworn detailed descriptive list. [J-2] Under the immovable category, the former matrimonial domicile, we've agreed to a value of a hundred and twenty-five thousand dollars ($125,000). And that will be allocated ... to Ms. Rosanne Kennedy....

* * *
Mr. Kneipp: The rental properties that's (sic) listed as item number 2, "a" through "x", we have agreed to a value of four hundred and twenty-eight thousand dollars ($428,000). And ... those assets will be allocated to Mr. D.M. Kennedy.
Mr. Oswalt: That's correct. And he will also not have to account any further from today for any rent income received off of those properties. Is that correct....
Mr. Kneipp: That's correct. Going on to the second page, but continuing on immovable (sic), the mobile home park is the one item that we have not agreed as to a value. However, we have agreed that Robert Horton will be permitted to conduct a full appraisal. A.J. Burns
The Court: Okay. Now I'm assuming that by full appraisal he will be using more than one approach perhaps?
Mr. Kneipp: That's correct. And A.J. Burns will be commissioned to ... update his earlier appraisal, but do a full appraisal.
Mr. Oswalt: Correct.
Mr. Kneipp: You'll have two ... appraisals....
The compromise reached in open court was concluded, and the parties subsequently filed two appraisals of the Warren Drive Property. The tract of land contains approximately 3.109 acres and consists of a mobile home park with 28 mobile home lots plus another lot improved with a three-bedroom house, which the Kennedys also leased.
The record and the minutes reflect that besides the two competing appraisals, no other evidence, argument or briefs were formally presented to the court prior to its ruling on the Warren Drive Property. Nevertheless, the trial court knew of Mr. Kennedy's argument, now presented in this appeal, regarding the problem of the dual listing for the Warren Drive Property in Exhibit J-2, as shown by the following excerpt from the trial court's ruling:
It should be noted that counsel for Mr. Kennedy takes the position that the residence located within the mobile home park at 1103 Warren Drive has already been allocated to Mr. Kennedy, and as such should be excluded from the Court's consideration of the appraised value of the mobile home park. In support of this contention, Kennedy makes reference to the stipulation entered into in open Court on October 11, 2001, where in regard to the second amended sworn detailed descriptive list of Rosanne Kennedy, which list was denominated as Exhibit "J-2" under the category of "Rental Properties," Item c is the entry "1103 Warren Drive." The total value agreed upon by the parties for the rental properties was some $428,000, as can be seen by reference to *682 the transcript of the stipulation. However, after having reviewed the record and listened to the argument of counsel, it is clear to this writer that the $428,000 figure for rental properties represents a figure agreed upon mutually by the parties for those rental structures which were previously appraised by Monroe Appraiser Richard K. Moore. Mr. Moore's appraisal, which is contained in the record as Exhibit "J-1," lists only the numerous rental houses formerly owned by the parties in community. Therefore, the rent house at 1103 Warren Drive, together with all 28 lots, must be properly considered by the Court in determining valuation of what has been heretofore referred to as the "Warren Drive Mobile Home Park."
The court then fixed the value of the Warren Drive Property at $229,500.
The trial court rendered a partial judgment pertaining to the contested value of the Warren Drive Property on April 22, 2002 (hereinafter "Partial Judgment"), and subsequently, on September 5, 2002, rendered a consent judgment (hereinafter "Consent Judgment") embodying the terms of the parties' October 11, 2001 compromise. By the time of the Consent Judgment, the trial court was advised that the second equalizing payment for $151,692.48 remained unsatisfied during the initial 90-day period after the compromise and was still unpaid. The court therefore fixed interest on that payment at three percent (3%) from October 11, 2001 until January 10, 2002, and, thereafter, at the legal rate of interest until paid.
Significantly, the Consent Judgment reserved to Mr. Kennedy the right to appeal (i) "the issue of whether the rent house located at 1103 Warren Drive is to be considered in the value of the mobile home park," and (ii) "the court's ruling that interest is due on the equalizing payment and accounting owed by him to Rosanne Kennedy." Those issues are now the subject of this appeal.

Discussion
A compromise reached by the parties in the course of their litigation is addressed in Civil Code Article 3071, as follows:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.
Compromise cannot be attacked on account of any error in law or any lesion, but an error in calculation may always be corrected. La. C.C. art. 3078. The compromise may be rescinded notwithstanding, whenever there exists an error in the person or on the matter in dispute. La. C.C. art. 3079.
Reviewing our law pertaining to the interpretation of a disputed compromise, the Louisiana Supreme Court, in Brown v. Drillers, Inc., 93-1019 (La.1/14/94), 630 So.2d 741, 748, stated:
... LSA-C.C. Art. 3071 further provides that a compromise is a written contract. It follows that the compromise instrument is the law between the parties and must be interpreted according to the parties' true intent. [citations omitted] It also follows that the compromise *683 instrument is governed by the same general rules of construction applicable to contracts.
LSA-C.C. Art.2046 sets forth a general rule of construction, providing that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LSA-C.C. Art.2046 (emphasis supplied). The underscored word "further" in this article signifies the true nature of contractual interpretation. The determination that the language contained in a contract is clear and explicit, in itself, involves an interpretive process. For that reason, LSA-C.C. Art.2046 emphasizes that the process involves no further interpretation, as opposed to no interpretation at all. [Citations omitted] LSA-C.C. Art. 3073 contains a supplementary rule of construction governing the interpretation of the operative language, and the determination of the scope, of a compromise agreement. LSA-C.C. Art. 3073 provides that a compromise agreement extends only to those matters that the parties expressly intended to settle and that the scope of the transaction cannot be extended by implication. [citations omitted] More precisely, LSA-C.C. Art. 3073 set forth the following four factors to be considered in determining the scope of a compromise instrument:
Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties,
whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed; and they do not extend to differences which the parties never intended to include in them.

* * *
In applying the rule of construction set forth in LSA-C.C. Art. 3073, courts are guided by the general principle "that the contract must be construed as a whole and in light of attending events and circumstances." [citations omitted] LSC.C. Art.2050. Thus, the intent which the words of the compromise instrument express in light of the surrounding circumstances at the time of execution of the agreement is controlling.
In this case, in accordance with Article 3071, the parties recited their compromise in open court, incorporating by reference the written document, Exhibit J-2, which contained the dual listing of the Warren Drive Property. The substance of the oral compromise was later memorialized in the Consent Judgment. In rendering that judgment, the trial court interpreted the parties' open court compromise as having dealt with the Warren Drive Property in its entirety, granting ownership of the whole 3.109-acre tract and the three-bedroom home to Mr. Kennedy in exchange for one-half of the disputed value of the property received by Mrs. Kennedy. The Warren Drive Property value was to be resolved by further litigation and was the only issue left unsettled by the compromise.
Mr. Kennedy argues that the rental house located on a portion of the Warren Drive Property was included in the parties' compromise and Consent Judgment, and that he received ownership of that dwelling along with the other rental properties valued by the parties in their compromise at $428,000. We view this argument as an assertion of error concerning a portion of the disputed community property which was the subject of the compromise/partition. Mr. Kennedy asserts that the error was caused by Mrs. Kennedy's misdescription *684 of the rental properties included on her descriptive list, Exhibit J-2. While Mr. Kennedy urges that this court should simply revise the Consent Judgment in his favor and lower the award to Mrs. Kennedy rendered by the Partial Judgment, the alleged error would equally vitiate both parties' consent to the compromise, and effectively rescind the entire contract pursuant to Civil Code Article 3079. Mrs. Kennedy likewise would be deemed to have been in error because of the ambiguous inclusion of the Warren Drive Property in two separate sections of Exhibit J-2. Nevertheless, from our review of the parties' open court agreement and the record, we agree with the trial court that no such error in the parties' intent occurred.
The record reflects that in the trial of the partition action before the compromise, Mr. Kennedy filed into evidence an appraisal of twenty-three rental properties. Those appraised properties were the same properties listed as rental properties "a" through "x" on Mrs. Kennedy's detailed descriptive list, with the exception of item "c," the Warren Drive Property. Mrs. Kennedy's position during the litigation, as reflected on her detailed descriptive list, was that the rental properties were worth $453,000, the gross value of the properties as estimated in the Moore appraisal. The appraisal assigned a lower net value for the properties after excluding the "total cost to sell" the properties. Mr. Kennedy was asserting this lower value of $385,000. The parties eventually compromised their positions and settled for $428,000 as the value of the rental properties.
The trial court appropriately relied on the Moore appraisal as evidence that Mr. Kennedy could not be in error in the parties' compromise over the twenty-three rental properties. Additionally, the court could consider the $263,000 which Mrs. Kennedy's detailed descriptive list asserted for the separate item she listed as the "Mobile Home Park at 1103 Warren Drive." This figure coincides with the highest appraised value for the entirety of the disputed property, including the three-bedroom house valued separately at approximately $60,000. Therefore, despite the dual listing for the Warren Drive Property on Exhibit J-2, the values which Mrs. Kennedy asserted in the litigation demonstrated that the three-bedroom house was included and valued with the adjacent trailer park lots, not with her listing of the rental properties.
In its determination of the parties' intent, the trial court also indicated that it relied on the record of the trial which preceded the compromise. Thus, at trial, further clarification may have been given regarding Mrs. Kennedy's confused listing of the Warren Drive Property. The trial transcript prior to the compromise is not in the record. When the record lacks a transcript that is pertinent to an issue raised on appeal, the inadequacy of the record is attributable to the appellant. Gay v. C & D of Shreveport, 25,319 (La. App.2d Cir.10/26/94), 645 So.2d 280.
From all of the surrounding circumstances of the litigation, the trial court, which accepted the parties' oral compromise, was in the best position to interpret their intent and to express their contract in the Consent Judgment. The trial court found that there was no error regarding the parties' understanding of the status of the Warren Drive Property and its three-bedroom house and enforced their contract in the Consent Judgment. We find no error in that ruling.
The next issue concerns the trial court's judgment ordering that legal interest be paid on the equalizing payments from January 10, 2002, until paid. From our review of the oral compromise, the *685 only mention of the interest to be paid on the amounts owed by Mr. Kennedy are the following statements by counsel for Mrs. Kennedy and the trial court:
Mr. Kneipp: "And Mr. Kennedy will owe three percent interest on one-half of those [equalizing payment amounts] from the date the petition was filed until the payment"[1]
* * *
The Court: "Mr. Kennedy will make an accounting of one-half of that sum and pay interest at three percent on that sum from the date the petition was... for partition of the community was filed until it is paid."
Our examination of Exhibit J-2, which served as the written accounting statement for the compromise, indicates that the parties also made a notation in the margin for "+ interest," "3%," under the section of the exhibit listing the amounts of various monies previously received by Mr. Kennedy for which his accounting was owed. These amounts were included in the computation of a second equalizing payment which Mr. Kennedy was to have made within 90 days following the October 11, 2001 compromise. That equalizing payment was eventually determined and stipulated to be $151,692.48. Mr. Kennedy does not now dispute the fact that $151,692.48 became owed by him on January 10, 2002, nor does he dispute that interest is owed on that amount for the 90 days between October 11, 2001 and the due date. He argues, however, that no interest was owed after January 10, 2002, and that the trial court erred in adding legal interest on the amount of the equalizing payments owed from January 10, 2002 until paid.
The compromise of October 11, 2001 was a contract. Mrs. Kennedy agreed that after that date, Mr. Kennedy would own the rental properties and trailer park and receive all rents generated from those properties. Mr. Kennedy agreed that he would owe her two debts, represented by two remaining equalizing payments that would become due in 2002. Mr. Kennedy concedes that he was initially to pay interest on those amounts at 3%, but he insists that such interest was stipulated for only 90 days. As shown above by the quoted testimony during the oral compromise, the only stipulations concerning the 3% interest expressed that such contractual rate would be owed "until it is paid."
Civil Code Article 2000 provides as follows:
When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by Article 2924.
The legal rate of interest in 2002 was 5.75%. La. R.S. 13:4202; Vol. 50, No. 4, La. B.J. 266 (2002). Since the parties in their compromise provided for the contractual rate of 3%, the legal interest rate stated in the judgment was in error. The contractual rate of interest was not just owed until the due date, it was owed until paid.

Conclusion
The Consent Judgment is hereby amended to provide for interest at the rate of 3 percent per annum on the equalizing payments owed by Mr. Kennedy from October 11, 2001, until paid. The judgment *686 as amended is affirmed. Costs of this appeal are assessed to appellant.
JUDGMENT AMENDED AND AS AMENDED, AFFIRMED.
NOTES
[1] Interest in the amount of 3% from the date of the petition through October 11, 2001 was included in the computation of the total of all the accounting and equalizing amounts owed by Mr. Kennedy. That interest amount is not disputed by Mr. Kennedy.