16 So.3d 476 (2009)
BLOOM'S INCORPORATED, Plaintiff-Appellee,
v.
PERFORMANCE FUELS, L.L.C. and/or Performance Fuels, Inc., Defendant-Appellant.
Nos. 44,259-CA, 44,452-CA.
Court of Appeal of Louisiana, Second Circuit.
July 1, 2009.
Rehearing Denied August 13, 2009.
*478 Lemle & Kelleher by David R. Taggart, Brad E. Wilkerson, for Appellant.
Cotton, Bolton, Hoychick, & Doughty by David P. Doughty, Rayville, for Appellee.
Before BROWN, CARAWAY, and LOLLEY, JJ.
BROWN, Chief Judge.
This case involves a dispute arising out of a commercial lease of immovable property in Madison Parish, Louisiana. On or about November 13, 1998, plaintiff, Bloom's, Inc., and defendant, Performance Fuels, L.L.C. and/or Performance Fuels, Inc., entered into a written lease whereby plaintiff leased to defendant approximately 3.3 acres of immovable property located in the northwest corner of the intersection of La. Hwy. 65 South and I-20 in Madison Parish, Louisiana. Defendant's intent as communicated to plaintiff during lease negotiations was to expand an adjacent existing facility into a truck stop/video poker casino and to use plaintiff's property for the casino and/or parking lot. On September 5, 2006, plaintiff filed a "Petition to Terminate Lease or in the Alternative, Escalate Lease Rental" seeking termination of the lease, based on allegations that defendant never paid the agreed-upon rental amounts and never took any steps toward establishment of the truck stop/video poker casino, including applying for a gaming license.
Shortly before the April 2, 2008, trial date, the parties entered into a "Letter Agreement" in an attempt to resolve all issues between them. Subject to the conditions set forth in the Letter Agreement, defendant agreed to purchase 5.467 acres of immovable property from plaintiff, which included the 3.3 acres subject to the lease. Defendant's agreement to purchase the property under the Letter Agreement was expressly contingent upon the execution of a Buy-Sell Agreement by both parties and the closing of the sale occurring on or before May 1, 2008. According to defendant, it was also contingent upon the fulfillment of two suspensive conditions: the seller having good, merchantable and unencumbered title to the property and minerals as evidenced by the purchaser's title opinion, and the survey of the property, if the purchaser obtained a survey, showing no encroachments, restrictions, or easements other than those duly recorded and filed in the public records of Madison Parish.
According to defendant, after executing the Letter Agreement, it hired independent third parties to prepare a title opinion and survey. The Buy-Sell Agreement was subsequently prepared by defendant's attorneys and sent to plaintiff's counsel for review. Paragraph 4 of the Buy-Sell Agreement contains the same two suspensive conditions as those set forth in the Letter Agreement.
Plaintiff signed the Buy-Sell Agreement and returned it to defendant's attorneys, *479 who forwarded it to defendant for review on April 23, 2008. Apparently by that time defendant knew it would not have either a title opinion or survey prior to the May 1, 2008, closing date, and it sought to reschedule the closing for a later date. On April 29, 2008, plaintiff sent a demand letter to defendant refusing to postpone the closing date and informing defendant of plaintiff's intention to file a motion to enforce the settlement agreement or reset the matter for trial if the closing didn't occur as scheduled. Defendant did not execute the Buy-Sell Agreement, asserting as its reason an inability to verify that plaintiff possessed merchantable title to the property prior to closing.
On May 1, 2008, plaintiff filed a "Motion to Enforce Settlement Agreement and to Re-Fix Trial Date." A hearing on this motion was held on June 30, 2008. At this hearing, over defendant's objection, plaintiff presented the testimony of two witnesses, an abstractor and a real estate agent. The trial court found in favor of plaintiff and by judgment dated August 11, 2008, ordered defendant to pay $225,000, the price of the property as set forth in the Letter Agreement, within 30 days of judgment. The court further awarded attorney fees and court costs based upon the terms set forth in the Buy-Sell Agreement.
Thereafter, on September 19, 2008, plaintiff filed a "Motion for Contempt of Court and Sanctions/Mandatory Injunction," alleging that defendant was in contempt for failing to purchase the property as ordered in the court's previous judgment. A hearing on the contempt motion was held on December 15, 2008. At that time, defendant attempted to introduce into evidence an abstract and survey that it had allegedly received after the June 30, 2008, hearing. The trial court sustained plaintiff's objection to the introduction of these documents. The survey and abstract were proffered into the record.
The trial court found that the August 11, 2008, judgment was one for specific performance, not a money judgment as defendant contended, and found defendant to be in contempt of court for failing to purchase the property as ordered in the first judgment. The court ordered defendant to deposit $225,000 into the registry of the court within 10 days and plaintiff to deposit an executed deed to the property. This judgment was issued on December 29, 2008. Defendant appealed from both judgments and the appeals were consolidated.

Discussion

August 11, 2008, Judgment
In this judgment, the trial court granted the "Motion to Enforce Settlement Agreement and Re-Fix Trial Date" filed by plaintiff, Bloom's, Inc., and ordered defendant, Performance Fuels, Inc., to purchase the disputed property from plaintiff for $225,000 within 30 days from the date of judgment. Defendant was also ordered to pay court costs and attorney fees in the amount of $2,765.70 to plaintiff.
The majority of defendant's assignments of error relating to this judgment attack the trial court's interpretation of the parties' Letter Agreement and its various terms.
Initially, we recognize that the March 18, 2008, Letter Agreement constitutes both a settlement pursuant to La. C.C. art. 3071 and a contract to sell pursuant to La. C.C. art. 2623.
Louisiana Civil Code article 3071 provides that:
A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship.
*480 Compromises are favored under the law, and the burden of proof of the invalidity or unenforceability of a such an agreement is on the party attacking it. Rivett v. State Farm, 508 So.2d 1356 (La. 1987); Klebanoff v. Haberle, 43,102 (La. App.2d Cir.03/19/08), 978 So.2d 598. As noted by this court in Kennedy v. Kennedy, 36,974 (La.App.2d Cir.03/05/03), 840 So.2d 679, a compromise instrument is the law between the parties and must be interpreted according to their true intent.
A compromise is a contract, and one cannot evade the obligation(s) of a contract of compromise by breaching it. Palmer v. Lanco Construction, Inc., 95-0987 (La.App. 4th Cir.11/30/95), 665 So.2d 1217. When a compromise imposes an obligation to do, the breach of that obligation entitles the obligee to damages or specific performance. Id.
Article 2623 of the Civil Code sets forth the requisite elements of a contract to sell or a purchase agreement. Specifically, La. C.C. art. 2623 provides that:
An agreement whereby one party promises to sell and the other promises to buy a thing at a later time, or upon the happening of a condition, or upon performance of some obligation by either party, is a bilateral promise of sale or contract to sell. Such an agreement gives either party the right to demand specific performance. A contract to sell must set forth the thing and the price, and meet the formal requirements of the sale it contemplates.
Louisiana Civil Code article 1759 provides that good faith shall govern the conduct of the obligor and obligee in whatever pertains to the obligation. La. C.C. art.1983 provides that contracts must be performed in good faith. Nesbitt v. Dunn, 28,240 (La.App.2d Cir.04/03/96), 672 So.2d 226. A party to a contract has an implied obligation to put forth a good faith effort to fulfill the conditions of the contract. Payne v. Hurwitz, 07-0081 (La.App. 1st Cir.01/16/08), 978 So.2d 1000.
The only conditions or contingencies to the executory nature of the Letter Agreement as both a settlement and contract to sell were: (1) the ministerial act of signing of an actual (and virtually identical) contract to sell by both parties and (2) the seller having merchantable title to the property and minerals as evidenced by the purchaser's title opinion. The Letter Agreement also provided that if the purchaser obtained a survey of the property, this survey must show no encroachments, restrictions, or easements other than those duly filed and recorded in the public records of Madison Parish.
We note that at the hearing on plaintiff's motion to enforce the parties' Letter Agreement, the trial court, over objection by defense counsel, allowed plaintiff to present the testimony of two witnesses, Tim Hoychick, an abstractor, and Jim Thomas, a real estate broker. While the court's rationale for allowing this testimony was that the Letter Agreement was ambiguous, we note that this evidence was admissible not to establish the terms of the agreement or intent of the parties thereto, but to show the parties' conduct thereunder.[1]See, Andrew Development Corp. v. West Esplanade Corp., 347 So.2d 210 (La.1977).
Specifically, Hoychick testified that he had done abstract work on the five acres *481 owned by plaintiff twice: once at plaintiff's attorney's request and once at the request of M & M Title of Shreveport for defendant. Hoychick discussed the abstract and testified that the property was acquired by Bloom's, Inc., in 1956. His research revealed the lease between the parties and several small rights-of-way. There were no mortgages or encumbrances on the property, noted Hoychick. According to Hoychick, M & M requested and received an abstract on the subject property in April 2008.
Jim Thomas testified that he was contacted by the law firm representing defendant. At their request, he recommended several surveyors, one of whom, a Mr. Messenger, had done the original survey work on the property. On April 9, 2008, Thomas spoke with a survey crew on the property; one of the men told Thomas they had been hired by defendant. Thomas discussed the previous Messenger survey, and the crew acknowledged that they had already found the points and had begun putting up the stakes exactly where Messenger had said they were.
On the other hand, defendant's attorney presented no evidence whatsoever at the hearing. On appeal, defendant asserts that plaintiff's title is unmerchantable. However, defendant bore the burden of proof on this issue and offered nothing which even questioned or disputed the merchantability of plaintiff's title. See, Langford Land Company v. Dietzgen Corp., 352 So.2d 386 (La.App. 4th Cir. 1977). A purchaser cannot arbitrarily reject title without a substantial reason and in the absence of such a reason, he will be compelled to accept title. Kay v. Carter, 243 La. 1095, 150 So.2d 27 (La.1963); Toler v. Pacific International Petroleum, Inc., 465 So.2d 925 (La.App. 2d Cir.1985), writ denied, 468 So.2d 1210 (La.1985).
Based upon the terms set forth in the parties' Letter Agreement and Buy-Sell Agreement, together with evidence presented by plaintiff at the hearing on June 30, 2008, the trial court found that: (1) plaintiff possessed a merchantable title to the subject property; (2) since there was no survey obtained by defendant, the only condition that had to be met was that plaintiff tender a good and merchantable title, which it was prepared to do; (3) plaintiff was entitled to specific performance under the terms of the parties' agreement; and (4) plaintiff was entitled to court costs and attorney fees.
As noted above, both parties had an implied obligation to put forth a good faith effort to fulfill the conditions of their agreement. The evidence shows that defendant prepared the Buy-Sell Agreement, then refused to sign it. Although defendant had ample time within which to obtain both a title opinion and survey on the subject property (not just by the closing date of May 1, 2008, but as of the hearing on June 30, 2008), the evidence shows that defendant did not do so.[2] Therefore, under C.C. art. 1772, these conditions are deemed as fulfilled, and plaintiff is entitled to specific performance. See, Groghan v. Billingsley, 313 So.2d 255 (La.App. 4th Cir.1975), writs denied, 318 So.2d 46, 48 (La.1975); Schwarz v. Bourgeois, 459 So.2d 650 (La.App. 4th Cir.1984). This includes the trial court's award of court costs and attorney fees as contemplated by the parties in their Buy-Sell Agreement.

December 29, 2008, Judgment
In this judgment, the trial court found that the August 11, 2008, judgment was *482 one for specific performance and found defendant to be in contempt of court for its failure to purchase the property as ordered in the first judgment. The court ordered defendant to deposit $225,000 into the registry of the court and plaintiff to deposit an executed deed to the property within 10 days of the contempt judgment.
At this hearing on the contempt motion, the trial court refused to allow defendant to introduce evidence on the issue of the merchantability of plaintiff's title. The proper time for defendant to have presented this evidence would have been at the June 2008 hearing on plaintiff's motion to enforce the settlement. The trial court did not err in refusing to admit this evidence at the contempt hearing.
Defendant argues that the first judgment is a money judgment. We have already addressed the fact that plaintiff was entitled to specific performance. La. C.C. art. 2623 gives either party to a contract to sell the right to demand specific performance. It is elementary that the act that a buyer in default would be ordered to perform is usually going to be a tender of the purchase price to the seller. Concomitantly, one entitled to specific performance from an unwilling seller would usually receive a tender of title or deed. The trial court's August 11, 2008, judgment ordered defendant to tender the purchase price previously agreed upon by the parties in a purchase agreement.
Finally, while defendant has asked this court to set aside the contempt judgment, we find that because there were no sanctions imposed against defendant in the contempt judgment, this judgment is not ripe for review. See, Nesbitt v. Nesbitt, 40,442 (La.App.2d Cir.01/13/06), 920 So.2d 326, writ denied, 06-0720 (La.06/20/06), 929 So.2d 1255.[3]

Conclusion
For the reasons set forth above, the August 11, 2008, judgment of the trial court is affirmed. The contempt matter is remanded to the trial court for further proceedings. Costs of this appeal are assessed against defendant, Performance Fuels, Inc.
APPLICATION FOR REHEARING
Before BROWN, CARAWAY, DREW, MOORE and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] Neither party contends that the Letter Agreement is ambiguous and we agree. Nonetheless, the trial court did not err in allowing plaintiff to present this testimony on the issue of the parties' conduct or actions in accordance with or in breach of the compromise/contract to sell as set forth in their Letter Agreement and Buy-Sell Agreement.
[2] If there is a flaw in the title, defendant's remedy would be an action for possible breach of warranty and/or rescission of sale.
[3] As noted by the Second Circuit, an adjudication of contempt without the imposition of sanctions is meaningless. Nesbitt, supra at 330, citing Lemoine v. Lemoine, 303 So.2d 520 (La.App. 1st Cir. 1974).