BROWN, C.J.
*596 Plaintiffs, approximately 243 persons (divided into two groups of claimants) who have settled their medical malpractice claims against a qualified health care provider, his insurer, LAMMICO, and the Patients' Compensation Fund ("PCF"), have appealed from the trial court's judgment which granted LAMMICO's exception of res judicata and dismissed Plaintiffs' action for penalties and damages pursuant to La. R.S. 22:1892 and La. R.S. 22:1973 for the insurer's alleged failure to pay insurance settlement proceeds within 30 days of their written settlement agreement. For the reasons set forth below, we affirm.
FACTS AND PROCEDURAL HISTORY
A document entitled "Settlement Agreement" which expressed, inter alia , the parties' intent to terminate the original malpractice litigation by a group settlement or "any other reasonably agreed upon settlement process as contemplated herein," was perfected on December 2, 2014, with an effective date of December 3, 2014. All parties signed the Settlement Agreement on or before the effective date. The following are some of the terms of this agreement:
(1) LAMMICO and the PCF are to jointly fund a $4.5 million "Group A" settlement fund and an $8 million "Group B" settlement fund as part of the process.
(2) The allocation of the settlement funds among the claimants and others is to be made in a Group Settlement which may be by way of a class action settlement.
(3) Judge Frank Thaxton is to be appointed as the special master, arbitrator, or alternate dispute resolution fact finder.
(4) Two groups of claimants are to be established: Group A and Group B claimants.
(5) The special master is to establish and allocate the two settlement funds.
(6) The special master is to determine the value of each Group A claimant's individual claim, which is to be satisfied from the Group A settlement fund.
(7) The special master is to determine the merits of each Group B claimant's claim, including whether the claim is "cognizable in law, prescribed, or otherwise does not entitle the Group B claimant to recovery" and value, if any, of each Group B claimant's claim.
(8) The settlement funds are to be held, deposited or maintained in an escrow account maintained by the special master.
(9) Before the settlement funds can be withdrawn, several requirements must be met, including approval by a court of the Group Settlement and its terms (or an alternative if chosen), presentation of *597 a fully executed Motion and Order of Dismissal, and the execution by all parties of a "reasonable receipt and release of all claims."
(10) "Defendants collectively or singly, shall, at their option, have the right to terminate this Agreement" if any claimant opts out of the Group Settlement or agreed upon alternative dispute resolution process.
(11) "The Parties further acknowledge that this Agreement contemplates additional pleadings, documents and filings and agree to fully cooperate, in good faith, in the drafting and execution of same." These additional "pleadings, documents, and filings" included a Receipt and Release to be executed by each claimant.
The parties' attorneys did not reach a final agreement on the form of the Receipt and Release document until February 3, 2015, approximately 60 days after the Settlement Agreement was executed. In the Receipt and Release, each claimant agreed that:
APPEARER(S) further declares/declare and represents/represent that no promise or agreement not herein expressed has been made to him/her/them, and that this Receipt and Release and the Settlement Agreement dated December 3, 2014 , incorporated herein by reference, including with regard to confidentiality, contain the entire agreement between the parties hereto, and that the terms of this Receipt and Release are contractual and not a mere recital. (Emphasis added).
In the Receipt and Releases, Plaintiffs also acknowledged that "the settlement and release made and effected herein is a compromise settlement of the RELEASED PARTIES with APPEARER(S)," and "[t]he terms and conditions of the Settlement Agreement dated December 3, 2014, are specifically referenced and incorporated by reference herein." Furthermore, by signing the Receipt and Releases, each claimant was acknowledging that he or she may be entitled to no payment, but that he or she was given "the opportunity to participate in the resolution process and make claims upon those settlement funds established and funded pursuant to that certain Settlement Agreement ... the receipt, sufficiency and value to APPEARER(S) of which is herein acknowledged."
The parties also signed a Joint Motion and Judgment of Dismissal to implement the terms of the parties' compromise agreement. LAMMICO made a conditional tender of the settlement funds to the mediator/facilitator on January 14, 2015, and the funds were released on February 4, 2015. Plaintiffs filed the instant action seeking penalties and damages, urging that LAMMICO failed to timely fund the settlement when it did not unconditionally tender the agreed upon sums by January 3, 2015. LAMMICO filed a motion for summary judgment and several exceptions, including a peremptory exception of res judicata , asserting that its duty to tender the funds was not triggered until the parties completed their global settlement process. Additionally, by confessing the receipt and adequacy of the settlement funds when they executed the Receipt and Release portion of the compromise, Plaintiffs waived any potential claims related to the alleged late funding of the settlement.
Taking up the exception of res judicata first, the trial court heard argument from counsel and considered evidence at a hearing on March 27, 2017. Finding that the doctrine of res judicata applied to Plaintiffs' claims for penalties and damages, the trial court granted Defendant's exception and dismissed Plaintiffs' claims with prejudice in a judgment filed on April 4, 2017. It *598 is from this adverse judgment that Plaintiffs have appealed.
DISCUSSION
Res Judicata
According to Plaintiffs, the trial court erred in finding that the doctrine of res judicata precluded their suit for penalties and damages for LAMMICO's late payment of the global settlement amounts set forth in the parties' December 3, 2014, Settlement Agreement. LAMMICO urges this Court to affirm the ruling of the trial court.
The standard of review of a ruling on an exception of res judicata is manifest error when the exception is raised before the case is submitted and evidence is received from both sides. Toliver v. Entergy Services, Inc. , 49,954 (La. App. 2d Cir. 6/24/15), 169 So.3d 774, writ denied , 15-1633 (La. 10/30/15), 180 So.3d 299 ; Floyd v. City of Bossier City , 38,187 (La. App. 2d Cir. 3/5/04), 867 So.2d 993.
Louisiana's doctrine of res judicata is set forth in La. R.S. 13:4231, which provides:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
Under La. R.S. 13:4231, a second action is precluded when all of the following are satisfied: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. Chauvin v. Exxon Mobil Corp. , 14-0808 (La. 12/9/14), 158 So.3d 761 ; Chevron U.S.A., Inc. v. State, 07-2469 (La. 9/8/08), 993 So.2d 187 ; Burguieres v. Pollingue , 02-1385 (La. 2/25/03), 843 So.2d 1049. The chief inquiry is whether the second action asserts a cause of action that arises out of the transaction or occurrence that was the subject matter of the first action. Chauvin, supra ; Avenue Plaza, L.L.C. v. Falgoust , 96-0173 (La. 7/2/96), 676 So.2d 1077.
While the doctrine of res judicata is ordinarily premised on a final judgment on the merits, it also applies where the opposing parties have entered into a compromise or settlement of a disputed matter. Chauvin, supra ; Ortego v. State, Dept. of Transportation & Development , 96-1322 (La. 2/25/97), 689 So.2d 1358. See also La. C.C. art. 3080, which provides that a compromise precludes the parties from bringing a subsequent action based upon the matter that was compromised.
Public policy favors compromise agreements and the finality of settlements. Brown v. Drillers, Inc., 93-1019 (La. 01/14/94), 630 So.2d 741. La. C.C. art. 3071 provides that a compromise is a contract *599 whereby the parties, through concessions made by one or more of them, settle a dispute or uncertainty concerning an obligation or other legal relationship. As observed by the Louisiana Supreme Court in Trahan v. Coca Cola Bottling Co. United Inc. , 04-0100 (La. 3/2/05), 894 So.2d 1096, 1104, article 3071 requires the presence of two elements for a valid compromise: "(1) mutual intention of preventing or putting an end to the litigation, and (2) reciprocal concessions of the parties to adjust their differences." See also Hines v. Smith , 44,285 (La. App. 2d Cir. 8/12/09), 16 So.3d 1234, writ denied , 09-2001 (La. 12/11/09), 23 So.3d 922.
A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express. La. C.C. art. 3076. The compromise instrument is governed by the same general rules of construction applicable to contracts. Chauvin, supra ; Brown, supra. Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. Therefore, when the words of a settlement or compromise are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046 ; Chauvin, supra ; Ortego, supra .
In the instant action, both parties agree that the first three elements required for res judicata to apply to Plaintiffs' action as set forth in Burguieres, supra , are present: (1) and (2) a valid and final judgment (settlement or compromise in this case); and (3) the same parties. They dispute, however, whether (4) the cause of action asserted in the instant suit existed at the time of the settlement or compromise; and (5) the cause of action asserted in instant suit arose out of the transaction or occurrence that was the subject matter of the settlement or compromise.
The parties' Settlement Agreement clearly provides that additional documents were to be executed to affect the parties' compromise agreement, among them a Receipt and Release, in which each claimant agreed and acknowledged that the Receipt and Release and the Settlement Agreement contained the entire agreement between the parties, and together constituted a compromise settlement between them. By signing the Receipt and Release, each claimant also acknowledged that he or she may be entitled to no payment, but was given "the opportunity to participate in the resolution process and make claims upon those settlement funds established and funded pursuant to that certain Settlement Agreement ... the receipt, sufficiency, and value to APPEARER(S) of which is herein acknowledged." Regarding the specific release language, each claimant released the listed defendants, including LAMMICO from:
[A]ny and all actions, causes of actions, rights of actions, claims, liability, demands, losses, damages, pain and suffering, mental anguish, loss of enjoyment of life, exemplary damages, ... ancillary expenses, attorney's fees, and compensation of any kind, including but not limited to all claims in tort, negligence, intentional acts, administrative negligence, contract, warranty, equity, whether based on federal or state law and/or jurisprudence, ... or any other applicable law, claim, or cause of action which APPEARER(S) had or has/have against the RELEASED PARTIES as of December 3, 2014, and all claims for losses, damages, costs, and expenses ... that are related to, necessitated by, or arise from the circumstances or facts forming the basis of the claims released *600 herein and, included but not limited to those complaints and/or claims raised or which could have been raised or plead in his/her/their suit filed in the 1st Judicial District Court for Caddo Parish, Civil Action No. N/A/ and/or Patient's Compensation Fund Claim, Claim No. 2011-00915. (Emphasis added).
A compromise instrument is the law between the parties and must be interpreted according to their true intent. Bloom's Inc. v. Performance Fuels, L.L.C. , 44,259 (La. App. 2d Cir. 7/1/09), 16 So.3d 476, writ denied , 09-2003 (La. 11/20/09), 25 So.3d 800 ; Kennedy v. Kennedy, 36,974 (La. App. 2d Cir. 3/5/03), 840 So.2d 679. In the Receipt and Release executed as part of the compromise agreement by each claimant, not only did he or she confess the receipt and adequacy of LAMMICO's settlement funds, conditionally tendered to the mediator/facilitator on January 14, 2015, and deposited by him on February 4, 2015, as soon as the form of the Receipt and Release was agreed upon by the parties' attorneys, each claimant released LAMMICO from any claims he or she could have brought. Had Plaintiffs' counsel desired to reserve any potential claims for penalties and damages arising out of the alleged late establishment of the two Group settlement funds, specific language to that effect should have been included in the Receipt and Release. As it was not, we find no error in the trial court's conclusion that the language used by the parties in the release was broad enough to cover all claims, including the instant action, and that the doctrine of res judicata mandates dismissal of Plaintiffs' lawsuit.
Sealing of the Record
The parties in this case apparently were able to convince the trial court to seal the entirety of this record. Neither party, however, made any motions in this court to seal either the appellate record or the briefs, nor has there been a request that this Court's opinion be unpublished. The Louisiana Constitution has an "open courts" provision; specifically, "[a]ll courts shall be open ..." La. Const. art. I, § 22. Furthermore, in Louisiana, the public has a constitutional right of access to court records. Copeland v. Copeland , 07-0177 (La. 10/16/07), 966 So.2d 1040, 1044, citing Title Research Corp. v. Rausch , 450 So.2d 933, 941 (La. 1984). As a general rule, pleadings filed in this Court are public records and are not subject to being sealed. Copeland, supra, citing In re John Doe, 96-2222 (La. 9/13/96), 679 So.2d 900, 901. As observed by the First Circuit in Dipaola v. Municipal Police Employees' Retirement System , 14-0037 (La. App. 1st Cir. 9/25/14), 155 So.3d 49, 51 fn.1, Louisiana has no specific statutory authority for a court to seal its record of a civil case from public inspection. See also, In re Kemp , 45,028 (La. App. 2d Cir. 3/3/10), 32 So.3d 1050, 1054, writ denied , 10-0755 (La. 6/25/10), 38 So.3d 338. Having no valid reason to extend the trial court's order sealing this record, we decline to do so.
CONCLUSION
For the reasons set forth above, the trial court's judgment granting the peremptory exception of res judicata filed by Defendant LAMMICO and dismissing with prejudice the action filed by Plaintiffs is AFFIRMED. Costs are assessed to Plaintiffs.
AFFIRMED.