# Supreme Court of Louisiana

The Opinions handed down on the **9th day of December, 2014**, are as follows:

**BY GUIDRY, J.**:

2014-CC-0808    DWAYNE CHAUVIN v. EXXON MOBIL CORPORATION, ET AL. (Parish of Jefferson)

> Accordingly, the court of appeal's decision is reversed and the trial court's judgment is reinstated.
> REVERSED; DISTRICT COURT JUDGMENT REINSTATED.

SUPREME COURT OF LOUISIANA

No. 2014-CC-0808

DWAYNE CHAUVIN

VERSUS

EXXON MOBIL CORPORATION, ET AL.

ON SUPERVISORY WRITS TO THE TWENTY-FOURTH JUDICIAL
DISTRICT COURT FOR THE PARISH OF JEFFERSON

GUIDRY, Justice

We granted the writ application to determine whether the plaintiff is precluded from asserting a claim for punitive damages after having settled such claims relating to fear of contracting cancer and increased risk of developing cancer in a prior suit, albeit with a reservation of rights as to a claim for damages related to future cancer that is diagnosed after the effective date of the settlement agreement. The trial court found res judicata barred the plaintiff's subsequent claim for punitive damages relating to the diagnosis of cancer where the same alleged misconduct had given rise to the plaintiff's claim for punitive damages in the earlier litigation asserting fear of contracting cancer and increased risk of developing cancer. The court of appeal granted writs and summarily reversed the trial court's ruling, holding the plaintiff had established an exception to res judicata under La. Rev. Stat. 13:4232(A)(3), because he had reserved his right to bring another action based on the future diagnosis of cancer.[1] For the following reasons,

_____

[1] La. Rev. Stat. 13:4232(A), entitled "Exceptions to the general rule of res judicata," provides as follows:

    A. A judgment does not bar another action by the plaintiff:

    (1) When exceptional circumstances justify relief from the res judicata effect of the judgment;
    (2) When the judgment dismissed the first action without prejudice; or,
    (3) When the judgment reserved the right of the plaintiff to bring another action.

we hold punitive damages relate to conduct and are separate from compensatory damages for injury. Because the plaintiff in this case specifically released all punitive and exemplary damages arising out of the defendant's alleged misconduct, his subsequent claim for punitive damages is barred by res judicata. Accordingly, the trial court correctly sustained the defendant's exception of res judicata and dismissed the punitive damages claim with prejudice.

**FACTS AND PROCEDURAL HISTORY**

The plaintiff, Dwayne Chauvin, was previously a plaintiff in a cumulated action styled *Warren Lester, et al. v. Exxon Mobil Corporation, et al.*, 2002-19657, Civil District Court, Orleans Parish, Div. N-8. In the *Lester* litigation, Mr. Chauvin sought damages against Shell Oil Company, Shell Offshore Inc., and SWEPI LP (hereinafter collectively referred to as "Shell"), among other defendants, for injuries he allegedly incurred as a result of his occupational exposure to naturally occurring radioactive material ("NORM") from 1980 to 1992. In February 2011, Mr. Chauvin entered into a Confidential Settlement Agreement ("Agreement") with Shell to end his participation in the *Lester* litigation.

The Agreement provided that, in exchange for a confidential settlement amount, Mr. Chauvin released all past, present, and future claims for damages arising from Shell's conduct and actions that allegedly resulted in Mr. Chauvin's occupational exposure to NORM. This provision defined the "Released Claims" and specifically included "punitive" and "exemplary" damages, as well as all liability arising from Shell's alleged "wanton or reckless conduct." The Agreement further provided that, "[n]otwithstanding the foregoing,…" Mr. Chauvin reserved his right to seek "damages for his future cancer that is diagnosed

after the Effective Date of this Agreement[.]" Based on the Agreement, Mr. Chauvin's claims against Shell in the *Lester* case were dismissed with prejudice in July 2011.

In August 2011, Mr. Chauvin was diagnosed with renal cancer. He filed the present suit against Shell, and others, in April of 2012, in the 24th Judicial District Court, Parish of Jefferson, claiming his cancer was related to his occupational exposure to NORM. In this suit, Mr. Chauvin seeks "any and all damages" related to his cancer diagnosis, including punitive damages, relying on his reservation of rights in the Agreement.

Shell filed a motion for summary judgment and a peremptory exception of res judicata, seeking, in part, the dismissal of all claims barred by Mr. Chauvin's prior settlement with Shell and the dismissal with prejudice of Mr. Chauvin's claims in *Lester*. Shell attached the Agreement under seal with the district court. According to Shell, Mr. Chauvin's claim for punitive damages was specifically defined as part of the "Released Claims," and was therefore extinguished in the Agreement. Mr. Chauvin argued he had specifically reserved in the Agreement all claims for all damages that arose from his future cancer, including punitive damages related to the future cancer.

The trial court granted the motion/exception to the extent that it dismissed all claims other than damages for Mr. Chauvin's future cancer. When asked for clarification, the trial court stated that "the exemplary and punitive damages claims are dismissed subject to res judicata as a result of the Release other than Mr. Chauvin's individual claim for damages for his cancer itself."

The court of appeal granted Mr. Chauvin's writ application and reversed the district court's ruling. Relying on La. Rev. Stat. 13:4232(A)(3), the third exception to the application of res judicata, *see* Note 1, *supra*, the court of appeal found that

Mr. Chauvin, in the Agreement, had reserved the right to bring all claims for damages, including punitive damages, in the event he would be diagnosed with cancer in the future. The court of appeal stated:

> Relator's claims for punitive damages asserted in the present case did not become exigent until he contracted cancer, and we find that these claims were reserved in the settlement agreement, as they arise from relator's development of cancer. Therefore, *res judicata* does not apply to relator's claims for punitive damages in this lawsuit, and we reverse the trial court judgment that granted defendants' Exception of *Res Judicata* in part, as it pertains to punitive damages."

This court granted Shell's writ application to review the correctness of the court of appeal's decision. *Chauvin v. Exxon Mobil Corporation*, 14-0808 (La. 6/20/14), ___ So.3d ___.

**DISCUSSION**

In this court, Shell first argues the court of appeal erred in its application of res judicata, because the trial court correctly found res judicata barred Mr. Chauvin's current claim for punitive damages where the same alleged misconduct gave rise to Mr. Chauvin's claim for punitive damages in the *Lester* litigation, which was settled, as well as to his claim for punitive damages in the current suit. Shell asserts that, because Mr. Chauvin's first claim for punitive damages arising from the same alleged misconduct of Shell was fully released in the Agreement and not included in the reservation of his claim for damages for future cancer, the court of appeal's decision creates the potential for multiple punitive damage awards for the same conduct and evidences a flawed understanding of punitive damages, which are damages for "particularly aggravated misconduct on the part of the defendant," and not for the harm "caused by a defendant's act." *Ross v. Conoco, Inc.*, 02-299, p. 9 (La. 10/15/02), 828 So.2d 546, 552-53. Second, Shell asserts the court of appeal disregarded the plain language of the Agreement, which explicitly released all claims for "punitive" and "exemplary" damages and reserved

4

only claims "for damages for his future cancer." Shell contends the court of appeal's decision amounts to an alteration of the bargained-for terms of the Agreement, in contravention of well-settled law.

Mr. Chauvin counters that Shell released punitive damages only with regard to the fear of cancer, which is a different claim from the one asserted in the present litigation, for a diagnosis of cancer. Mr. Chauvin argues that he reserved his right to seek "all damages" with regard to any future diagnosis of cancer, and that punitive damages fall within the scope of the reservation of rights.

For the reasons set forth below, we find the court of appeal erred in reversing the trial court's ruling sustaining the exception of res judicata. The substantive issues raised by Shell require an understanding of how res judicata, compromise, and the nature of punitive damages interconnect under the facts presented here.

The doctrine of res judicata as applied in Louisiana is set forth in La. Rev. Stat. 13:4231, as amended in 1990. The statute provides as follows:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
>
> (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
>
> 3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

Under La. Rev. Stat. 13:4231, a second action is precluded when all of the

5

following are satisfied: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. *Burguieres v. Pollingue*, 02-1385, pp. 6-8 (La. 2/25/03), 843 So.2d 1049, 1052-53; *see also Chevron U.S.A., Inc. v. State*, 07-2469, pp. 10-11 (La. 9/8/08), 993 So.2d 187, 194. Since the 1990 amendment to the res judicata statute, "the chief inquiry is whether the second action asserts a cause of action which arises out of the transaction or occurrence that was the subject matter of the first action." *Id.* (citing *Avenue Plaza, L.L.C. v. Falgoust*, 96-0173, p. 6 (La.7/2/96), 676 So.2d 1077, 1080, and La. Rev. Stat. 13:4231 cmt. a (1990)). Accordingly, Mr. Chauvin's second action seeking punitive damages will be precluded by res judicata if the five factors previously mentioned are satisfied.

While the doctrine of res judicata is ordinarily premised on a final judgment on the merits, it also applies where there is a transaction or settlement of a disputed or compromised matter that has been entered into by the parties. *Ortego v. State, Dept. of Transp. and Development*, 96-1322, p. 6 (La. 2/25/97); 689 So.2d 1358, 1363. La. Civ. Code. art. 3071 defines a transaction or compromise as "… a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." A party claiming res judicata based on a compromise agreement must have been a party to the compromise, and the authority of the thing adjudged extends only to the matters those parties intended to settle. *Ortega*, 96-1322, p. 7, 689 So.2d at 136. A compromise instrument is the law between the parties and must be interpreted according to the parties' intent. The compromise instrument is

6

governed by the same general rules of construction applicable to contracts. *Id.* Therefore, when the words of a settlement or compromise are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. Civ. Code art. 2046.

Here, the Agreement entered into by Mr. Chauvin and Shell to terminate the *Lester* litigation as it pertained to Mr. Chauvin was signed on February 21, 2011. Based on this Agreement, the *Lester* case was dismissed with prejudice on July 8, 2011. The resolution of the first suit is therefore valid and final. The parties to the Agreement and on opposite sides of the exception at issue in the current suit are clearly the same: Mr. Chauvin and Shell. Therefore, the first three factors in La. Rev. Stat. 13:4231 are met. What is left to be decided in this case is whether the cause of action for punitive damages asserted in the current suit existed at the time of final judgment in the first litigation and whether the cause of action arose out of the transaction or occurrence that was the subject matter of the first litigation. *See* La. Rev. Stat. 13:4231. We must also determine whether the court of appeal correctly found under La. Rev. Stat. 13:4232(A)(3) that Mr. Chauvin in the Agreement had reserved his right to pursue punitive damages as it relates to the diagnosis of cancer.

As with any interpretation of a contract, we turn to the words of the Confidential Settlement Agreement itself. Section II of the Agreement, entitled "Recitals," sets forth the intentions of the parties and states, in pertinent part:

> Whereas, except for any claim for all damages for cancer arising from Settling Plaintiff's alleged occupational exposure that Settling Plaintiff is diagnosed with after the Effective Date of this Agreement, as specifically described in Paragraph III.2 below, **the Parties now desire and intend to fully and finally settle and release,** without any finding or admission of liability of any Released Party or Defendant, **all disputes, controversies, and claims that presently exist or that could ever be made** against the Defendants and the Released Parties concerning the subject matter of the Litigation, **including without**

7

**limitation all claims for** personal injury, damage, disease, medical monitoring, wrongful death, survival, fear of illness, and increased risk of cancer, **all measures of damages (including punitive and exemplary damages)**, and all claims, (except for claims for future diagnosed cancer as specifically described in Paragraph III.2 below, and all damages arising out of future diagnosed cancer) **for Settling Plaintiff's alleged occupational exposure to NORM, …** and thereby avoid the expense, inconvenience and distraction of further litigation, all on the basis herein after set forth… (Emphasis added)

The Terms of Agreement are found in Section III. At subsection 2, entitled "Release of Settling Plaintiff's Claims," the Agreement defines the claims Mr. Chauvin released:

In consideration of the payment … **Settling Plaintiff** … **does hereby release, remise and forever discharge Defendants and Released Parties of and from** any and all liability, rights demands, claims, liens, remedies, debts, injuries, causes of action, obligations, suits and **damages of whatever nature or kind, known or unknown, foreseen or unforeseen, contingent, nascent, accrued, or otherwise** …, and **whether grounded in** negligence, intentional tort, strict liability, absolute liability, ultrahazardous liability, **wanton or reckless conduct,** … **or under any other legal theory whatsoever which Settling Plaintiff had in the past, has now or which he may hereafter acquire,** arising out of or in any way related to the Litigation, or the claims or allegations contained therein or that could have been asserted therein, **or the conduct or fault of Defendants**, or any other liability legally asserted or assertable by Settling Plaintiff, … **including without limitation, … punitive damages, exemplary damages, … arising out of or related to the alleged presence of and/or exposure to NORM**, … (hereinafter collectively, the "Released Claims").

Shell relies on this comprehensive release, noting that punitive and exemplary damages are specifically acknowledged and released, as well as any claims that could arise based on the conduct or fault of Shell, even wanton or reckless conduct, arising out of or related to the alleged presence of and/or exposure to NORM. According to Shell, there is only one punitive damage claim that can arise out of the same conduct and Mr. Chauvin settled it in the *Lester* litigation.

Notwithstanding this comprehensive definition of "Released Claims," Mr. Chauvin relies upon the very next paragraph explaining the Terms of the

8

Agreement:

> Notwithstanding the foregoing, the Parties expressly acknowledge and agree that the term "Released Claims" does not include any claims of Settling Plaintiff … for damages for his future cancer that is diagnosed after the Effective Date of this Agreement arising from his alleged occupational exposure to NORM… .

Reading the Agreement as a whole, Mr. Chauvin asserts, can lead to no other conclusion except that he reserved his right to bring any and all claims with regard to a future diagnosis of cancer. He contends punitive damages are necessarily included within the reservation because the jury's determinations whether to award such damages and how much to award are inextricably linked to the harm caused by the defendant's wrongful conduct. Mr. Chauvin cites the language of former La. Civ. Code art. 2315.3, now repealed, which provided that "[i]n addition to general and special damages, exemplary damages may be awarded, **if it is proved that plaintiff's injuries were caused** by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances…." (Emphasis supplied.) Mr. Chauvin argues that punitive damage liability is relative, and therefore limited, to the harm caused to the particular plaintiff at trial. Divorcing the two, he argues, is contrary to the plain language of the statute and the purpose of punitive damages. He cites *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), for the proposition that the gravity of the punishment must parallel the harm the wrongful conduct caused.

The court of appeal agreed with Mr. Chauvin that he had reserved his right to pursue punitive damages, apparently on the basis that punitive damages are tied to the specific injury and thus are simply a component of available damages for that injury. We find the court of appeal erred in failing to distinguish that punitive damages arise from conduct and are separate and distinct from, and thus not a

9

component of, damages related to a specific injury. That concept is well-settled in the jurisprudence of this court, as well as the United States Supreme Court.

The general public policy in Louisiana is against punitive damages. *Ross v. Conoco, Inc.*, 02-0299, p. 14 (La. 10/15/02), 828 So.2d 546, 555. Thus, punitive or other penalty damages are not allowed unless expressly authorized by statute. And even when a statute does authorize the imposition of punitive damages, it is strictly construed. *Id.*

Former La. Civ. Code art. 2315.3 created a right to punitive damages against a party who displayed wanton and reckless disregard for public safety in the storage, handling or transportation of hazardous or toxic substances. *Anderson v. Avondale Industries, Inc.*, 00-2799, p. 3 (La. 10/16/01), 798 So.2d 93, 96. This statute, which became effective on September 4, 1984, was repealed as of April 16, 1996, and stated:

> In addition to general and special damages, exemplary damages may be awarded, if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances.

The codal article set out the elements of the cause of action for punitive damages, the standards for liability for the tortfeasor's conduct, and the remedies or consequences of such conduct. *Anderson*, 00-2799, p. 8, 978 So.2d at 100. In *Anderson*, this court stressed the statute created a cause of action for punitive damages for certain enumerated conduct. *Id.*, 00-2799, p. 10-11, 978 So.2d at 102.

Punitive damages are sums awarded separate and apart from any compensatory or nominal damages, as punishment or deterrence levied because of particularly aggravated misconduct on the part of the defendant. *Mosing v. Domas*, 02-0012 (La. 10/15/02), 830 So.2d 967; *Ross v. Conoco, Inc.*, 02-0299, (La. 10/15/02), 828 So.2d 546; *Billiot v. B.P. Oil Co.*, 93-1118 (La. 9/29/94), 645 So.2d 604; *overruled on other grounds in Adams v. J.E. Merit Constr.*, 97-2005 (La.

10

5/19/98), 712 So.2d 88. The basis for the award is the defendant's motives and conduct in committing the particular tort, rather than the tort or injury itself. *Billiot v. B.P. Oil Co.*, p. 9, 645 So.2d at 617. Thus, the purpose of punitive damages, given to the plaintiff over and above the full compensation for his injuries, is to punish the defendant, to teach the defendant not to do it again, and to deter others from following the defendant's example. *Id.* Former Article 2315.3 imposed "a duty on the defendant, for the protection of the public, to refrain from wanton or reckless conduct in the handling, transportation or storage of hazardous or toxic substances, that endanger the public, in default of which the defendant may be ordered to pay punitive damages to any person caused injury by his aggravated misconduct." *Id.*, 645 So.2d at 617.

Compensatory damages remunerate a plaintiff for injury caused by a defendant's act. *Ross*, 02-0299, p. 9, 828 So.2d at 552-53. Punitive damages, by comparison, are not designed to make an injured party "whole"; instead, "they are meant to punish the tortfeasor and deter specific conduct to protect the public interest." *Id.* "[T]he emphasis in evaluating exemplary damage awards is not on the damages sustained by the plaintiff, but rather on the conduct of the defendant." *Mosing*, 02-0012, pp. 7-8, 830 So.2d at 973-74.

Because a claim for punitive damages is related to the defendant's conduct, and not the plaintiff's particular injury, Mr. Chauvin's assertion that punitive damages arise with each separate injury, even when based on the same conduct or actions of the defendant, is incorrect as a matter of law and disregards the nature and purpose of punitive damages. As the United States Supreme Court has explained,

> [I]n our judicial system compensatory and punitive damages, although usually awarded at the same time by the same decisionmaker, serve different purposes. Compensatory damages "are intended to redress the concrete loss that the plaintiff has suffered by reason of the

11

defendant's wrongful conduct." By contrast, punitive damages serve a broader function; they are aimed at deterrence and retribution.

*State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416, 123 S.Ct. 1513, 1519, 155 L.Ed.2d 585 (2003) (citations omitted).

Furthermore, we find no basis for tethering a punitive damages claim to a particular injury, rather than to the particular misconduct that caused the injury or potential injury. While there must be an actual injury to bring a claim under former La. Civ. Code art. 2315.3, the focus of the punitive damages award is upon the defendant's misconduct and the harm, both actual and potential, suffered by the tort victim. Mr. Chauvin asserts a jury's decision to impose a punitive damage award must necessarily take into account the amount of the compensatory award, and thus the amount of a punitive damage award is proportionally related to the particular injury; therefore, he contends, he should not be denied the opportunity to assert a punitive damages claim for his actual diagnosis of cancer, which would have a potentially greater compensatory award than a claim for fear of cancer or increased risk of cancer correlating to a higher punitive damages award. We note, however, that the evaluation of an excessiveness challenge to a punitive damages award must consider certain guideposts to ensure both reasonableness and proportionality. *See Campbell*, 538 U.S. at 428, 123 S.Ct. at 1525-26. Those guideposts are: "(1) the degree of reprehensibility of the defendant's misconduct; (2) **the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award**; and (3) the difference between the punitive damages awarded by the jury and civil penalties authorized or imposed in comparable cases." *Campbell*, 538 U.S. at 418, 123 S.Ct. at 1520 (citations omitted, emphasis supplied); *see also Mosing*, pp. 15-16, 830 So.2d at 978 (adopting these factors for evaluating excessiveness of a punitive damages award as first articulated in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct.

12

1589, 134 L.Ed.2d 809 (1996)). Therefore, not only is it clear that potential harm to the victim as a result of the defendant's misconduct has always been a viable consideration for imposition of a punitive damages award, both this court and the Supreme Court have declined to draw bright line rules with regard to the proportionality of the punitive damages award to the compensatory damages award. Moreover, to allow the plaintiff to assert a punitive damages award relating to his claim for a diagnosis of cancer in addition to a punitive damages award for relating to his claims for fear of contracting cancer or increased risk of developing cancer would effectively allow multiple punitive damages awards asserted by the same victim against the defendant for the same misconduct.

With these principles in mind, we turn to the last two considerations for applying res judicata set forth in La. Res. Stat. 13:4231: whether the cause of action for punitive damages asserted in the current suit existed at the time of final judgment in the first litigation and whether the cause of action arose out of the transaction or occurrence that was the subject matter of the first litigation. As discussed above, this court's jurisprudence regarding the nature of punitive damages was well developed at the time the *Lester* settlement was confected. The law was clear that punitive damages awards are intended to punish and deter reprehensible conduct, that punitive damages for conduct are not tethered to a specific injury, and that the actual and potential harm suffered by the victim is an accepted consideration for determination of the reasonableness of a punitive damages award. In this case, the parties agree the conduct and actions of Shell that resulted in Mr. Chauvin's alleged occupational exposure to NORM are the same in both the *Lester* litigation and the current lawsuit. Because there is only one punitive damages claim that can arise from Shell's same alleged misconduct, Mr. Chauvin's cause of action asserted in the current suit existed at the time the

13

Agreement was confected and resulted in a settlement that had the effect of a final judgment in the first litigation.

In addition, the cause of action asserted in the instant suit arises out of the same transaction or occurrence that was the subject matter of the first litigation, *i.e.* Shell's singular conduct and actions. The transaction or occurrence that was the subject matter of the *Lester* litigation was the plaintiff's allegation that the misconduct and actions of Shell, and others, resulted in Mr. Chauvin's occupational exposure to NORM, which in turn caused personal injury. Consequently, when Mr. Chauvin released his claims for punitive or exemplary damages in the *Lester* suit based on Shell's conduct resulting in his exposure to NORM, he released any further claim for punitive damages arising out of that conduct. He is now precluded by res judicata from asserting that claim again, even though he may seek compensatory damages for his later-diagnosed cancer.

The court of appeal erred in finding an exception to res judicata applied in this case, namely, that there was a reservation in the Agreement of the right to bring an action for punitive damages for a future diagnosis of cancer. *See* La. Rev. Stat. 13:4232(A)(3). In the Agreement, Mr. Chauvin reserved the right to pursue damages related to future cancer. In the absence of a specific reservation of his right to urge a claim for punitive damages, Mr. Chauvin could not reasonably have expected to again sue for that measure of damages for the same conduct on the part of Shell. Instead, Mr. Chauvin in the Agreement specifically agreed that any and all punitive and/or exemplary damages were included in the listing of claims specifically released. While Mr. Chauvin may seek compensatory damages based on his allegation that his cancer was causally-related to his exposure to NORM, his claim for punitive or exemplary damages relating to Shell's misconduct resulting in the exposure to NORM is barred by res judicata, and no exceptions set forth in

14

La. Rev. Stat. 13:4231(A) apply.

**CONCLUSION**

To capsulize, we hold that punitive damages relate to conduct and are separate and distinct from compensatory damages for injury. Because the plaintiff here specifically released all punitive and exemplary damages arising out of the defendant's alleged misconduct resulting in his exposure to NORM, his subsequent claim for punitive damages is barred by res judicata and no exceptions set forth in La. Rev. Stat. 13:4232(A) apply under the facts of this case. The court of appeal thus erred in reversing the trial court's judgment sustaining in part the defendant's exception of res judicata and dismissing the punitive and exemplary damages claim with prejudice.

**DECREE**

Accordingly, the court of appeal's decision is reversed and the trial court's judgment is reinstated.

**REVERSED; DISTRICT COURT JUDGMENT REINSTATED**