NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

23-478

STEVE CROOKS, ET AL.

VERSUS

STATE OF LOUISIANA, DEPARTMENT OF NATURAL
RESOURCES

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 224,262
HONORABLE MONIQUE FREEMAN RAULS, DISTRICT JUDGE

**********

CANDYCE G. PERRET
JUDGE

**********

Court composed of Shannon J. Gremillion, Candyce G. Perret, and Gary J. Ortego,
Judges.

MOTION TO DISMISS APPEAL DENIED;
PEREMPTORY EXCEPTIONS DENIED AS MOOT;
JUDGMENT OF THE TRIAL COURT AFFIRMED;
ANSWER TO APPEAL DENIED.

**Dale R. Baringer**
**Baringer Law Firm**
**201 St. Charles Street**
**Baton Rouge, LA   70802**
**(225) 383-9953**
**COUNSEL FOR DEFENDANT:**
    **Foster Investment Corporation**

**John Michael Veron**
**Veron, Bice, et al.**
**Post Office Box 2125**
**Lake Charles, LA   70602-2125**
**(337) 310-1600**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Theodore Morris Rabb-Class Plaintiff Rep**
    **H.D. Foote Lumber Company, LLC,**
       **Class Plaintiff Representatives**

**Virgil Russell Purvis, Jr.**
**Post Office Box 298**
**Jonesville, LA   71343**
**(318) 339-8526**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Theodore Morris Rabb-Class Plaintiff Rep**
    **H.D. Foote Lumber Company, LLC,**
       **Class Plaintiff Representatives**

**Charles Stovall Weems, III**
**Gold, Weems, Bruser, el al**
**Post Office Box 6118**
**Alexandria, LA   71307-6118**
**(318) 445-6471**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Theodore Morris Rabb-Class Plaintiff Rep**
    **H.D. Foote Lumber Company, LLC,**
       **Class Plaintiff Representatives**

**Christopher Joseph Piasecki**
**Davidson, Meaux, etc.**
**810 S Buchanan Street**
**Lafayette, LA   70502-2908**
**(337) 237-1660**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Theodore Morris Rabb-Class Plaintiff Rep**
    **H.D. Foote Lumber Company, LLC,**
    **Class Plaintiff Representatives**

**Scott C. Sinclair**
**Sinclair Law Firm**
**Post Office Box 1026**
**Shreveport, LA   71163**
**(318) 424-4901**
**COUNSEL FOR DEFENDANTS:**
    **TDX Energy**
    **Tensas Delta**
    **TMR Exploration, Inc.**

**Jamie D. Rhymes**
**Liskow & Lewis**
**Post Office Box 52008**
**Lafayette, LA   70505-2008**
**(337) 232-7424**
**COUNSEL FOR DEFENDANTS:**
    **Hunt Petroleum Corporation**
    **Exxon Mobil Oil Corporation**
    **XH, LLC**
    **XTO Energy, Inc.**

**Joseph Thompson, III.**
**1000 Main Street, 36th Floor**
**Houston, TX   77002**
**(713) 226-6704**
**COUNSEL FOR DEFENDANTS:**
    **Hunt Petroleum Corporation**
    **Exxon Mobil Oil Corporation**
    **XH, LLC**
    **XTO Energy, Inc.**

**Jimmy Roy Faircloth, Jr.**
**Faircloth Melton, LLC**
**105 Yorktown Drive**
**Alexandria, LA   71303**
**(318) 619-7755**
**COUNSEL FOR DEFENDANT:**
    **Justice Oil Company**

**Machelle R. L. Hall**
**Louisiana Deptartment of Justice**
**1185 North 3rd Street**
**Baton Rouge, LA   70802**
**(225) 326-6085**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **State of Lousiana, Department of Natural Resources**

**Kevin E. Huddell**
**Jones, Swanson, Huddell**
**601 Poydras Street, Suite 2655**
**New Orleans, LA   70130**
**(504) 523-2500**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Catahoula Lake Investments, LLC**

**Robert McCuller Baldwin**
**Jan Peter Christiansen**
**G. Adam Cossey**
**Hudson, Potts & Bernstein**
**Post Office Drawer 3008**
**Monroe, LA   71210-3008**
**(318) 388-4400**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Dennis Breland, et al**

**James L. Carroll**
**Post Office Drawer 1619**
**Columbia, LA   71418**
**(318) 649-9284**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Dennis Breland, et al**

**Matthew S. Kelley**
**Bethard & Bethard, L. L. P.**
**7600 Fern Avenue, Building 1000**
**Shreveport, LA   71105**
**(318) 932-4071**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Steve Crooks**
**Era Lea Crooks**

**PERRET, Judge.**

This case entails a seventeen-year history of complex class action litigation involving a dispute over the ownership of riverbanks in the Catahoula Basin and associated mineral royalty payments. At issue herein, however, is the narrow issue of attorneys' fees, which were set forth in a May 17, 2017 Judgment rendered against the Louisiana Department of Natural Resources ("the State"). A large sum of the judgment's monetary damages, specifically awarded for inverse condemnation damages, were subsequently vacated by the Louisiana Supreme Court when it found those claims prescribed. Thereafter, Era Lea Crooks, individually; Steve Crooks, individually and "as Class representative for the Lake Plaintiffs[;]" and other individual class plaintiffs who retained counsel ("Appellants"), filed a "Motion to Set Attorneys' Fees of Class Counsel." That motion sought to reduce the attorneys' fees awarded in the May 17, 2017 Judgment proportionally with the supreme court's reduction of the monetary damages. The trial court denied the motion on June 22, 2022, and this appeal ensued. On appeal, we affirm.

**FACTUAL AND PROCEDURAL HISTORY:**

The history of this case has been thoroughly detailed in prior appeals and supreme court opinions. To give context, the Louisiana Supreme Court in *Crooks v. Department of Natural Resources*, 19-160, pp. 2–4 (La. 1/29/20), 340 So.3d 574, 576–78 (footnotes omitted), *opinion corrected on rehearing*, (La. 4/9/20), set forth the background of the litigation:

> In 1962, the United States began constructing various structures in and around the Catahoula Basin pursuant to a congressionally-approved navigation project under the River and Harbor Act of 1960 to promote navigation on the Ouachita and Black Rivers. In conjunction with that project, the State of Louisiana signed an "Act of Assurances," which obligated the State to provide the federal government with all lands and property

interests necessary to the project free of charge, and to indemnify the federal government from any damages resulting from the project.

The project was completed in 1973 and, at that time, the United States Fish and Wildlife Service began managing the water levels in and around the Catahoula Basin. As intended, these water management activities increased water levels in the Catahoula Basin and prolonged the natural annual high-water fluctuations. The U.S. Fish and Wildlife Service continues to manage the water levels in the Catahoula Basin to this day. Also, the State, through the Department of Wildlife and Fisheries, has granted mineral leases in the area known as Catahoula Lake.

On May 4, 2006, plaintiffs Steve Crooks and Era Lea Crooks filed a "Class Action Petition to Fix Boundary, For Damages and For Declaration [sic] Judgment." The Crookses alleged that they represent a class of landowners in the Catahoula Basin whose property is affected by the increased water levels from the project. Ultimately, the trial court certified the plaintiffs as one class, but subdivided that class into two groups – the "Lake Plaintiffs" and the "Swamp Plaintiffs" – depending on the location of the properties affected.

Specifically, the Lake Plaintiffs are those property owners who sought (1) ownership of the land between the ordinary low and ordinary high water mark of the Little River located within the area known as Catahoula Lake; (2) a declaration that these lands were unlawfully expropriated by the navigation project, which obstructed the natural servitude of drainage; (3) damages for this inverse condemnation; and (4) recovery of the mineral royalty and other payments received by the State from mineral leases granted over the immovable property at issue.

The Swamp Plaintiffs are those persons owning property in the southwestern portion of the Catahoula Basin, designated as "overflow lands." Much of the land bordering and lying outside Catahoula Lake was approved as swampland and transferred to the State by the federal government under the Swampland Acts of 1849 and 1850. It is not disputed that these lands are below an elevation of 36 feet mean sea level, and that their titles originated from patents issued by the State. Because ownership of these swampland tracts is not disputed, these plaintiffs sought only a declaration of unlawful expropriation and damages for the inverse condemnation.

The central issue presented to the trial court in the claim of the Lake Plaintiffs was the classification of the area known as Catahoula Lake. The Lake Plaintiffs contended that, although referred to as a lake, the area actually constitutes the banks of the Little River, thus conferring on the Lake Plaintiffs ownership of

2

those lands between the ordinary low and the ordinary high water mark. See La. C.C. art. 456. The State countered, filing a reconventional demand which sought a declaration recognizing that Catahoula Lake is a lake and the State owns the bed and waters below the ordinary high water mark. See 578 La. C.C. art. 450.

In addition, the State filed a peremptory exception of no right of action asserting that the plaintiffs have no right of action against the State for any inverse condemnation by the federal government because the Act of Assurances is not a *stipulation pour autrui*, and/or a right of action only inures to those persons owning the land at the time it was taken, and only one of the plaintiffs had ownership when the navigation project was completed in 1973. The State also filed a peremptory exception of prescription, arguing that the plaintiffs' claims are prescribed under 28 U.S.C. § 25015 and, alternatively, under La. R.S. 13:51116 or La. R.S. 9:56247.

Following a [2015] bench trial, the trial court rendered a judgment in favor of the plaintiffs [the May 17, 2017 Final Judgement],[1] declaring that the body of water in the Catahoula Basin in 1812 was a permanent river that seasonally overflowed and covered its banks; the riparian landowners, i.e., the Lake Plaintiffs, are the owners of these river banks; and the State is liable for the inverse condemnation of these lands because of the significant obstruction of the natural servitude of drainage.

The May 17, 2017 Judgment (sometimes referred to herein as the "2017 Judgment") decreed the Lake Plaintiffs as the legal owners of the Catahoula Basin riverbanks and the Swamp Plaintiffs as legal owners of 7,580 acres of land identified in the 2017 Judgment, then decreed that the State is liable for the inverse condemnation of the Plaintiffs' lands. Accordingly, the May Final Judgment awarded expropriation damages to the Lake Plaintiffs and the Swamp Plaintiffs in the amounts of $28,745,438.40, and $9,550,800.00, respectively, with legal interest from May 4, 2006, until paid. Additionally, the court awarded $4,694,309.68 to the

---

[1] Following the bench trial in 2015, the trial court provided Written Reasons for Judgment, dated May 16, 2016. Thereafter, the parties filed motions and oppositions regarding attorneys' fees, costs, and incentive awards. On March 29, 2017, the trial court provided Written Reasons for Judgment, which included lengthy reasons for setting attorneys' fees at $22,075,843.82. The court considered the contractual fee agreement between the parties in light of the factors set forth in *State of Louisiana, Department of Transportation and Development v. Williamson*, 597 So.2d 439 (La.1992). The trial court signed a Judgment on May 17, 2017.

Lake Plaintiffs for oil and gas royalties, with interest, from May 2003 through trial. Of importance to the current appeal, the trial court awarded attorneys' fees in the amount of $22,075,843.82, and, pursuant to La.R.S. 13:5111 and La.Code Civ.P. art. 595, ordered seventy-five percent (75%), or $16,556,882.87, to be paid by the State, and twenty-five percent (25%), or $5,518,960.95, to be assessed against the common fund for the class.

Relative to the current issue at hand, on appeal of the 2017 Judgment, one of the issues raised by the State was the trial court's method for awarding attorneys' fees as well as the amount. This court affirmed the awards of the trial court but ordered that one hundred percent (100%) of the attorneys' fees be assessed against the common fund for the class pursuant to La.Code Civ.P. art. 595. *Crooks v. Dep't of Nat. Res.*, 17-750 (La.App. 3 Cir. 12/28/18), 263 So.3d 540.

The State applied for supervisory writs to the Louisiana Supreme Court, which was granted and briefing was ordered on the limited issue of whether "[t]he lower courts erred in failing to find that the Plaintiffs' inverse condemnation claims have prescribed under either or both La. R.S. 13:511 or 28 U.S.C. § 2501." *Crooks v. Dep't of Nat. Res.*, 19-160, p. 1 (La. 5/6/19), 269 So.3d 691, 691. Thereafter, the State filed exceptions of prescription and no cause of action, arguing "that if the Court finds the Act of Assurances constitutes a *stipulation pour autrui*, giving the plaintiffs an inverse condemnation cause of action against the State, then the plaintiffs' action to enforce the stipulation in their favor is subject to prescription of ten years under La. C.C. art. 3499[,]" and that "the plaintiffs have no cause of action against the State for mineral royalties[.]" *Crooks*, 340 So.3d at 580–81.

4

Plaintiffs did not seek supervisory writs to the supreme court regarding the portion of the court of appeal's judgment ordering all attorneys' fees to be paid from the common fund for the class.

Ultimately, the supreme court found the inverse condemnation claims prescribed and reversed that portion of the appellate judgment which upheld the $28,745,438.40, and the interest thereon, to the Lake Plaintiffs, and the $9,550,800.00, and the interest therein, to the Swamp Plaintiffs. *See Crooks*, 340 So.3d 574. The appellate judgment was otherwise affirmed. Subsequently, the supreme court granted a re-hearing application by Plaintiffs, in part, to correct footnote nine in the opinion,[2] clarifying that the award for attorneys' fees, expert witness fees and costs, were not at issue in the writ application.

On July 6, 2020, Plaintiffs filed "Plaintiffs' Motion Regarding Issues on Remand with Incorporated Memorandum of Authorities" following the supreme court's decision. Being entitled to execute the final judgment, Plaintiffs sought a writ of mandamus to compel the State to pay the judgment, sanctions, for the State's failure to pay, and sought to have to have the trial court identify "lands of which the plaintiffs are the recognized owners and their partition into parcels for each individual member of the class, as well as any other matters incidental thereto[.]" In a footnote, Plaintiffs clarified that "[t]his function will include overseeing other necessary post-trial processes, including but not limited to, determining how the

---

[2] Footnote nine in the original supreme court opinion stated:

> The trial court also awarded the plaintiffs attorneys fees, expert witness fees and costs, which the court of appeal vacated in *Crooks v. Department of Natural Resources*, 2017-750, p. 35-38 (La. App. 3 Cir. 12/28/18), 263 So. 3d 540, 565-67 (Amy, J., dissents). The award for those items is not at issue in this writ application.

*Crooks*, 340 So.3d at 579, n. 9.

now-final judgment on attorney's fees must be allocated and paid." Notably, the *amount* of the attorneys' fees set forth in the 2017 Judgment was not raised.

A letter dated September 22, 2020, and filed with the court on September 23, 2020, from Steve Crooks informed the court that he was terminating his "relationship and the relationship of the Class with the attorneys representing the Class and me." The reasons for the termination indicated a disagreement between Crooks, and allegedly the Class members, and their attorneys over the amount of attorneys' fees owed. The letter then indicated Crooks had secured new counsel for future matters, including the attorney fee issue. A Motion to Substitute Counsel was filed shortly thereafter on October 7, 2020, withdrawn, and refiled as a motion to enroll specifically on behalf of only those plaintiffs who retained the new counsel. A contradictory hearing on the motion was set for November 22, 2020.

Nothing regarding the amount of attorneys' fees, aside from mentioning the dispute in Crooks' letter to the court, was filed until March 17, 2022. On March 17, 2022, Appellants[3] filed a Motion to Set Attorneys' Fees of Class Counsel due to the attorneys' fees awarded in the 2017 Judgment now exceeding the monetary recovery required to be placed in the common fund by the State. Appellants sought a reduction of the attorneys' fees proportional to the reduction of the overall monetary award following the supreme court's decision in *Crooks*, 340 So.3d 580. The motion

---

[3] The motion was brought by:

Steve Crooks, Individually, Era Lea Crooks, Individually, and Steve Crooks as Class Representative for the Lake Plaintiffs, as well as for each of the following class plaintiffs who have retained undersigned counsel: Steve Crooks, Era Lea Crooks, Dennis Breland, Sheila Hudspeth, Jackie Wilson, Chet Whatley, Michael "Ben" Whatley, John Dahl Duke, Roger "Rocky" Ray, Nellie Ray Constance, Jeffery Willis, Michelle Willis, Chase Willis, Lindsay Willis, Trent Dauzat, Jennifer Little, John Little, Meredith Hailey, Carrie Lynn Huffman, Ricky Shirley, Dana Shirley, John "Rusty" Berry, Lauren Berry, and Clarence William "Bill" Breland, Jr.

argued that the remaining monetary award does not constitute a "common fund" as it only contains money for royalties owed to Lake Plaintiffs and that significant factors have changed since the trial court's determination of the amount of attorneys' fees. The motion also preemptively addressed a res judicata argument, asserting res judicata does not apply where attorneys' fees was not an issue between Plaintiffs and Defendants, and if it does apply, this situation falls under La.R.S. 13:4232 as an exception to the general rule. Finally, Appellants reminded the court that it is the "ultimate arbiter of attorneys' fees." A Rule to Show Cause hearing on the motion was set for May 23, 2022.

Class Counsel[4] (sometimes referred to herein as "Appellees") filed a Motion to Substitute Class Representative and Incorporated Memorandum seeking to have Steve Crooks and Era Lea Crooks released and replaced as class representatives. Class Counsel asserted the Crookses filed motions, objections, and incidental actions that are in direct conflict with their responsibilities as class representative, including the Motion to Set Attorneys' Fees of Class Counsel.

Thereafter, on June 10, 2022, Class Counsel also filed Class Counsel's Opposition to Motion to Re-Litigate and Reduce Attorneys' Fees. First, the opposition asserted res judicata bars re-litigation of the attorneys' fee award. Second, the opposition asserted that the common fund comprises much more than just past royalties, i.e., that the class was also recognized as the owners of over 30,000 acres of land, that interest continues to accrue on the royalties owed, and that class members are entitled to future royalties. Third, the opposition asserted that Class

---

[4] "Class Counsel" filing this motion consists of Charles S. Weems, III and Stephen A. LaFleur or Gold, Weems, Bruser, Sues & Rundell; J. Michael Veron and Turner D. Brumby of Veron, Bice, Palermo & Wilson, LLC; Russel Purvis of Smith, Taliaferro & Purvis; and James J. Davidson, III and Christopher J. Piasecki of Davidson, Meaux, Sonnier, McElligott, Fontenot, Gideon & Edwards.

Counsel, not individual plaintiffs or class representatives, determine what is best for the class and is the "paramount representative" of the class. Lastly, the opposition agreed that the trial court determines the reasonableness of counsel's fees, but pointed out that the trial court has already done so with extensive reasons for awarding those fees.

Appellants strenuously disagreed in their reply to the opposition that the Common Fund is comprised of more than just the royalties and interest thereon owed by the State. Appellants asserted that the money deposited by the State into the Common Fund is not common to the Class as a whole but is only common as to those Lake Plaintiffs entitled to royalties for producing wells on their property and the interest therein. The Lake Plaintiffs will have to prove their claim to the royalty funds prior to any monetary award being dispersed to them.

A hearing was held on the motion on June 20, 2022, at which time the trial court denied the motion, finding that the matter "has been decided, and it's res judicata." The court ordered a judgment be prepared. On June 22, 2022, the trial court signed a judgment denying the Motion to Set Attorneys' Fees of Class Counsel.

Prior to Appellant's brief being filed, Class Counsel, i.e. Appellees, filed three pleadings with this court: a Motion to Dismiss Appeal, Peremptory Exceptions, and an Answer to Appeal. The motion to dismiss asserts that the appeal is frivolous for several reasons: "it is barred by res judicata[,] . . . it is a prescribed attempt to annul a judgment[,] . . . it fails to state a cause of action to annul the judgment[,]" the plaintiffs have no right of action to challenge an award made for the class, and "the judgment in favor of the class more than justifies the fee." The same day, Class Counsel filed Peremptory Exceptions, raising the same issues as set forth in the Motion to Dismiss Appeal: res judicata, no cause of action, prescription, and a fourth

8

argument, albeit not a peremptory exception, arguing that the court determines what is best for the class. In the Answer to Appeal, Class Counsel seeks additional attorneys' fees.

Appellants filed oppositions to Class Counsel's pleadings, as well as their Appellant Brief, which sets forth two assignments of error:

1. The trial court committed legal error when it found the amount of attorney[s'] fees was *res judicata*.

2. The trial court committed reversible error when it failed to modify the fees of class counsel commensurate with the reduction of the "Common Fund" by the Louisiana Supreme Court.

**MOTION TO DISMISS AND PEREMPTORY EXCEPTIONS:**

In their Motion to Dismiss, Appellees request that the appeal be dismissed for the same reasons argued in their exceptions, the first being that the trial court's 2017 Judgment is res judicata as to attorneys' fees. Because we find that, for the reasons explained more fully below, res judicata applies, which involves an inquiry into the merits of the appeal, we deny Appellees' Motion to Dismiss Appeal. *See State ex rel. Willis v. Gen. Longshore Workers*, 200 La. 398, 8 So.2d 68 (1942); *Typhoon Fan Co. v. Pilsbury*, 166 La. 883, 118 So. 70 (1927). We further deny Appellees' Peremptory Exceptions as moot.

**RES JUDICATA:**

After a review of the record, law, and jurisprudence, we agree with the trial court that res judicata applies and prevents revisiting the attorneys' fees awarded in a final judgment in this case.

Louisiana Revised Statutes 13:4231 sets forth the doctrine of res judicata:

Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:

9

(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.

(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

Thus, our courts have applied the following elements to determine whether res judicata applies:

(1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation.

*Chauvin v. Exxon Mobil Corp.*, 14-808, pp. 5–6 (La. 12/9/14), 158 So.3d 761, 765.

The supreme court in *Sutton v. Adams*, 22-1672, p. 3 (La. 3/7/23), 356 So.3d 1030, 1032–33, *reh'g denied*, 22-1674 (La. 5/16/23), 360 So.3d 483, further explained the purpose and standard of review applicable to a finding of res judicata:

*Res judicata* is designed to "promote judicial efficiency and final resolution of disputes," and generally precludes the re-litigation of claims arising out of the same facts and circumstances between the same parties of a previous suit in which there is a valid, final judgment. *Avenue Plaza, LLC v. Falgoust*, 96-173 (La. 7/2/96), 676 So.2d 1077.

The standard of review of a peremptory exception of *res judicata* requires an appellate court to determine if the trial court's decision is legally correct. *Myers v. Nat'l Union Fire Ins. Co. of Louisiana*, 09-1517, p. 5 (La. App. 4 Cir. 5/19/10), 43 So.3d 207, 210 (citation omitted). Louisiana courts recognize that "a final judgment has the authority of *res judicata* only as to those issues presented in the pleading and conclusively adjudicated by the court." *Id.* Moreover, the doctrine of *res judicata* is *stricti juris* and, accordingly, any doubt

10

concerning the applicability of the principle must be resolved against its application. *Interdiction of Hunter*, 18-685 (La. App. 4 Cir. 12/19/18), 318 So.3d 784, *writ denied*, 19-208 (La. 4/8/19), 267 So.3d 608.

The party pleading res judicata bears the burden of establishing the essential elements of res judicata. *Diamond B Const. Co., Inc. v. Dep't of Transp. and Dev.*, 02-573 (La.App. 1 Cir. 2/14/03), 845 So.2d 429.

Finality of the 2017 Judgment:

Res judicata requires a valid final judgment. La.R.S. 13:4231.

A judgment determining the merits of a case is a final judgment. La.C.C.P. art. 1841. *See also, Tolis v. Board of Sup'rs of Louisiana State University,* 95–1529 (La.10/16/95); 660 So.2d 1206. . . . If a certiorari application is filed, the court of appeal judgment becomes final and definitive when the supreme court denies the application for certiorari. La.C.C.P. art. 2166D.

A final judgment from which there can be no appeal acquires the authority of the thing adjudged. La.C.C. art. 3506(31). Once a final judgment acquires the authority of the thing adjudged, no court has jurisdiction to change the judgment, regardless of the magnitude of the final judgment's error. *Tolis* at 3; 660 So.2d at 1206–1207.

*Ave. Plaza, L.L.C. v. Falgoust*, 96-173, pp. 4–5 (La. 7/2/96), 676 So.2d 1077, 1079.

The 2017 Judgment involved herein was appealed to both the appellate court and the supreme court. Thus, after the supreme court issued its opinion on January 29, 2020, and the rehearing was granted and decided on April 9, 2020, the judgment became final.

Attorneys' fees were adjudicated in the 2017 Judgment:

Res judicata applies "only as to those issues presented in the pleading and conclusively adjudicated by the court." *Sutton*, 356 So.3d at 1032–33 (citing *Myers*, 43 So.3d at 210).

Appellants first sought attorneys' fees in their 2006 Class Action Petition to Fix Boundary, For Damages and for Declaration Judgment. Attorneys' fees were

11

reserved in the trial court's 2016 Written Reasons for Judgment, determination on a future date: "all issues relating to . . . plaintiffs' request for reasonable attorneys' fees are hereby reserved unto the parties and are to be determined and fixed after a subsequent contradictory hearing[.]" The parties waived a contradictory hearing and submitted the matter on the record, written arguments, and supporting documentation. Thereafter, the trial court gave reasons for awarding attorneys' fees in its eighteen-page March 29, 2017 Written Reasons for Judgment, which were awarded for the work performed in litigating the class action's claims pursuant to La.R.S. 13:5111[5] and La.Code Civ.P. art. 595.[6] Thereafter, the amount of attorneys' fees was set forth in the now final 2017 Judgment.

In *Newburger v. Orkin, L.L.C.*, 20-534 (La.App. 3 Cir. 5/5/21), 320 So.3d 465, *writ denied*, 21-782 (La. 10/1/21), 324 So.3d 1061, the third circuit considered whether a defendant could demand attorneys' fees after the plaintiff's claims were dismissed, when the issue of attorneys' fees was not previously sought or reserved. The plaintiff filed an action to prohibit his condominium complex from spraying pest control chemicals around the complex. After the start of trial on injunctive relief, the matter was dismissed by directed verdict. The plaintiff appealed, and the third

---

[5] Louisiana Revised Statutes 13:5111 provides in pertinent part:

A. A court of Louisiana rendering a judgment for the plaintiff, in a proceeding brought against the state of Louisiana, a parish, or municipality or other political subdivision or an agency of any of them, for compensation for the taking of property by the defendant, other than through an expropriation proceeding, shall determine and award to the plaintiff, as a part of the costs of court, such sum as will, in the opinion of the court, compensate for reasonable attorney fees actually incurred because of such proceeding. . . .

[6] Louisiana Civil Code of Procedure Article 595 provides in pertinent part:

A. The court may allow the representative parties their reasonable expenses of litigation, including attorney's fees, when as a result of the class action a fund is made available, or a recovery or compromise is had which is beneficial, to the class.

circuit affirmed the dismissal. Thereafter, the condominium complex filed a "Motion for Assessment and Recovery of Attorney's Fees and Costs." *Id*. at 467. The complex sought the fees based on a provision of the Condominium Declaration. The plaintiff responded by asserting an exception of res judicata, which the trial court denied. On appeal, the condominium asserted in opposition to the appeal that (1) "the action for recovery of attorneys' fees did not mature until after this Court's prior judgment became final" and (2) the plea for attorneys' fees was made in their original answer by incorporating the Condominium Declaration. *Id*. at 468. However, this court disagreed. While this court acknowledged that it "has previously ruled that a judgment reserving the issue of attorneys' fees qualifies as an 'exceptional circumstance' to bring forth a motion for assessment of cost[s] and attorneys' fees after the judgment becomes final[,]" the condominium had "clear opportunities to reserve the request, yet" did not do so in the judgment. *Id*. at 469. "Louisiana jurisprudence requires that the issue of attorneys' fees and cost[s] not just be pled, but also reserved by the court prior to the final judgment or through said judgment." *Id*.

In the current case, no reservation of the determination of attorneys' fees was made in the 2017 Judgment; instead, the judgment specifically set forth the dollar amount of the attorneys' fees awarded:

> IT IS FURTHER ORDERED, ADJUDGED, and DECREED that (i) the Motion for Fees and Costs is GRANTED on the issue of attorney's fees; (ii) the Plaintiffs are awarded attorney's fees in the full sum of TWENTY TWO MILLION SEVENTY FIVE THOUSAND EIGHT HUNDRED AND FORTY THREE DOLLARS AND 82/100 ($22,075,843.82); (iii) pursuant to La. R.S. 13:5111, there be judgment herein in favor of the Plaintiffs, and against the State, for seventy-five percent of that amount, or $16,556,882.87, together with legal interest from the date of judgment until paid, for distribution to class counsel; and (iv) pursuant to article 595 of the Louisiana Code of Civil Procedure, the remaining twenty-five percent of that amount, or

13

$5,518,960.95, shall be assessed against the common fund for the class for distribution to class counsel.

The amount of the attorneys' fees became final when no reviewing court reversed or amended the amount set forth in the 2017 Final Judgment. One issue presented to the appellate court for review was whether the trial court erred in determining reasonable attorney's fees. *Crooks*, 263 So.3d 540. Despite the third circuit finding that the plaintiffs were not "entitled to attorney's fees under La.R.S. 13:5111[,]" it did not amend the amount of attorneys' fees awarded, but instead ordered those fees to be paid completely from the common fund pursuant to La.Code Civ.P. art. 595. *Id.* at 565. Review of that determination was not sought on a rehearing or with the supreme court.

For example, in *Board of Supervisors of Louisiana State University and Agricultural and Mechanical College v. Villavaso*, 14-1277 (La.App. 4 Cir. 12/23/15), 183 So.3d 757, *writ denied*, 16-161 (La. 3/24/16), 190 So.3d 1193, LSU asserted as an assignment of error on appeal that the attorneys' fees awarded in the trial court judgment should be reduced if there is a reduction in damages on appeal. Thereafter, because the appellate court chose to reduce the appellee's mental anguish damages, it suggested that said reduction would justify reducing the attorneys' fees. However, the appellate court chose to affirm the trial court's attorneys' fees award, and, instead, deny the appellee additional fees prayed for on appeal, stating: "We find any reduction in fees that this remittitur would justify is offset by fees attributable to the appeal." *Id.* at 769.

No similar action was taken by Appellants in this case. At no point did Appellants request that the amount of attorneys' fees, or even where the attorneys' fees were to be paid from, be revisited by the appellate or supreme court. Thus, the

issue of attorneys' fees was fully litigated and memorialized in the final judgment rendered on May 17, 2017, as amended by the appellate court in *Crooks*, 263 So.3d 540.

Same Parties:

Louisiana Revised Statute La.R.S. 13:4231 provides that a final judgment is conclusive between the same parties. The parties involved in the current motion to set attorneys' fees were involved in the prior litigation of that matter. No cause of action involving attorneys' fees has been asserted against new defendants. Instead, Appellants are seeking to reduce the amount of attorneys' fees based on a partially unfavorable ruling from the supreme court. The parties involved are the same.

Exceptional Circumstances:

Appellants argue that the factual scenario herein should be considered an exceptional circumstance to res judicata.

> Louisiana law provides that an earlier judgment does not bar another action by the plaintiff when exceptional circumstances justify relief from the *res judicata* effect of the judgment. LSA-R.S. 13:4232(A)(1). This provision gives the court discretion to grant relief from the judgment for exceptional circumstances. This discretion must be exercised on a case-by-case basis and such relief should be granted only in truly exceptional cases, otherwise the purpose of *res judicata* would be defeated. Nevertheless, this discretion is necessary to allow the court to balance the principle of *res judicata* with the interests of justice. The official comment to the statute refers to Rule 60(b) of the Federal Rules of Civil Procedure for guidance on what constitutes "exceptional circumstances." Rule 60(b) gives courts wide-ranging equitable discretion to relieve a party from a final judgment, "especially if no intervening rights have attached in reliance upon the judgment and no actual injustice will ensue." 11 Charles Alan Wright, Arthur R. Miller, and Mary Kane, *Federal Practice and Procedure* § 2857, 256 (2nd ed. 1995). In particular, Rule 60(b)(6) is a "grand reservoir of equitable power to do justice in a particular case when relief is not warranted" on other grounds specified in the rule, and this clause "gives the courts ample power to vacate judgments whenever such action is appropriate to accomplish justice." **Hesling v. CSX Transp., Inc.,** 396 F.3d 632, 643 (5th Cir. 2005); **Chauvin v. State Farm Mut. Auto. Ins. Co.,** 2007 WL 2903321, at *6 (E.D. La. 2007). It is designed to protect

> those drawn into error by an awkward factual or legal scenario, not those who can allude to no circumstance to justify their inaction below. **Spear v. Prudential Property and Cas. Ins. Co.,** 98-1663 (La. App. 4 Cir. 1/13/99), 727 So.2d 640, 642-43; **Centanni v. Ford Motor Co.,** 93-1133 (La. App. 3 Cir. 5/4/94), 636 So.2d 1153, <u>writ denied</u>, 94-1949 (La. 10/28/94), 644 So.2d 656.

*Sutton v. Adams*, 22-1672, pp. 9–10 (La. 3/7/23), 356 So.3d 1030, 1036–37, *reh'g denied*, 22-1674 (La. 5/16/23), 360 So.3d 483.

The third circuit has determined "that a judgment reserving the issue of attorneys' fees qualifies as an 'exceptional circumstance' to bring forth such a motion for assessment of cost and attorneys' fees after the judgment becomes final." *Newburger*, 320 So.3d at 469 (citing *A.M.C v. Caldwell,* 17-628 (La.App 3 Cir. 2/15/18), 239 So. 3d 948 and *Siemens Water Tech. Corp. v. Revo Water Sys., LLC,* 13-631(La.App. 3 Cir. 1/18/14), 130 So.3d 473).

In this case, however, attorneys' fees were thoroughly litigated. The trial court gave lengthy reasons for reaching the amount set forth in the 2017 Judgment. Furthermore, based on those reasons, the amount of attorneys' fees took into consideration more than the inverse condemnation claims, which were the claims found to be prescribed by the supreme court.

In determining a fair and proper fee, the trial court noted the contingency fee agreement with Steve Crooks and Era Lee Crooks and the clause therein stating, "if no recovery is made, I will not be indebted to my Attorney for any sum whatsoever as Attorney's fees." The trial court then considered the factors set forth in *State Department of Transportation and Development v. Williamson*, 597 So.2d 439 (La.1992).

Specifically, the trial court commended Class Counsel on their efforts, stating: "Class Counsel clearly achieved exceptional results providing substantial awards for

the class members." The trial court noted the length of the litigation, the difficulty and complexity of the issues involved, the voluminous record, the extensive preparation required, and the numerous appearances made by Class Counsel. The trial court also recognized that Class Counsel succeeded in more than just the monetary damages awards:

> In addition to the "common fund", Class Counsel successfully obtained a declaration that the class members, and not the State, owned the lands in dispute. Clearly, this declaration of ownership in favor of the class members is of great benefit and value to them especially considering that a portion of the properties will generate unknown sums in mineral royalties indefinitely.

In determining where the attorneys' fees should be paid from, the trial court "concluded that the attorney fee awards that Plaintiffs seek are of two kinds in this unique hybrid litigation involving two distinct, unrelated statutory bases for the award of attorneys fees." The trial court noted that fees awarded pursuant to La.R.S. 13:5111(A) would be cast against the State for those claims related to inverse condemnation, whereas those awarded pursuant to La.Code Civ.P. art. 595 would be paid from the common fund.

The court then acknowledged that a large sum of the principal award "represents damages for the State's unlawful expropriation of privately-owned property owned by the class members," but also noted that Class Counsel succeeded in winning an award for mineral royalty claims and that the matter was complicated because, "in addition to the large monetary award discussed herein, the class members were recognized as owners of 30,393.84 acres of land and the mineral rights, which should prove the be substantially lucrative, being vested in the landowners." The court continued, "Although not included in the compensation fund, these are clearly very valuable rights and must be taken into account for an

17

appropriate allocation." Additionally, "Class Counsels' time was devoted generally to the litigation as a while, making it difficult if not impossible to divide the hours expended on a claim-by-claim basis."

As seen in the excerpts above, the trial court thoroughly considered the intricacies of this case in setting a reasonable fee.

On appeal, this court upheld the amount of attorneys' fees set forth in the 2017 Judgment, but determined the entirety of the amount was to be paid from the common fund pursuant to La.Code Civ.P. art. 595.[7] Thus, despite having the opportunity to reduce the amount of attorneys' fees to be paid from the common fund, this court affirmed the amount set forth by the trial court.

After reviewing the record, we simply do not find that this case is an exceptional circumstance to the res judicata doctrine where the issue of attorneys' fees was previously raised and fully litigated.

**ANSWER TO APPEAL:**

Appellees filed an Answer to Appeal seeking additional attorneys' fees. "Generally, when an award for attorney's fees is granted at the trial level, additional attorney's fees are proper for work done on appeal. This is to keep the appellate judgment consistent with the underlying judgment." *Wilczewski v. Brookshire Grocery Store,* 08-718, p. 18 (La.App. 3 Cir. 1/28/09), 2 So.3d 1214, 1226, *writ denied,* 09-456 (La.4/13/09), 5 So.3d 170. *See also Siemens*, 130 So.3d 473.

While attorneys' fees were awarded in the 2017 Judgment, no fees were awarded on the judgment before us on appeal, i.e. the June 22, 2022 Judgment

---

[7] The third circuit concluded that attorneys' fees pursuant to La.R.S. 13:5111 are required when the judgment compensates for "'the taking of property by the' State." *Crooks*, 263 So.3d at 565 (quoting La.R.S. 13:5111). However, the third circuit found the taking in this case was by the United States, not the State, therefore, the plaintiffs were not entitled to attorneys' fees pursuant to La.R.S. 13:5111.

denying the Motion to Set Attorneys' Fees of Class Counsel.  Thus, we decline to award attorneys' fees on appeal in this case.  However, costs of this proceeding are assessed to Appellants.

**DECREE:**

For the reasons set forth above, Appellees' Motion to Dismiss Appeal is denied.  Because this case has been decided on the merits of the appeal, which also happens to be raised as one of the exceptions in Appellees' Peremptory Exceptions, the Appellees' Peremptory Exceptions are denied as moot.  The June 22, 2022 Judgment of the trial court is affirmed.  Furthermore, Appellees' Answer to Appeal for additional attorneys' fees is denied.  Appellants are cast with all costs of this appeal.

**MOTION TO DISMISS APPEAL DENIED; PEREMPTORY EXCEPTIONS DENIED AS MOOT; JUDGMENT OF THE TRIAL COURT AFFIRMED; ANSWER TO APPEAL DENIED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.